UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

)
MELVIN BROWN,                              )
                                           )
            Plaintiff,                     )
      v.                                   )    Civil Action No. 14-0140 (TSC)
                                           )
SANDRA HILL, *et al.*,                     )
                                           )
            Defendants.                    )
                                           )

**MEMORANDUM OPINION**

This matter is before the court on the defendants' motions to dismiss. For the reasons discussed below, the motions will be granted.

I. BACKGROUND

Plaintiff, who is proceeding *pro se* and *in forma pauperis*, filed his initial complaint on December 11, 2013, and an Amended Complaint [ECF No. 13] on November 21, 2014. The defendants include So Others Might Eat, its President, and several of its staff members (collectively, "S.O.M.E."), *see* Am. Compl. at 1-2, Green Door, its President and several staff members (collectively, "Green Door"), *id*. at 2, and David Walker ("Walker"), a District of Columbia government employee, *see id*. at 2, 4-5. Although the bases of the plaintiff's claims are not entirely clear, the court begins with its understanding of the relevant facts.

The plaintiff received services from S.O.M.E., Green Door, and the District of Columbia Department of Behavioral Health ("DBH"), formerly known as the Department of Mental Health. *See* Compl. at 3. The District of Columbia contracted with Green Door, which the

1

Plaintiff identifies as "his core service agency," presumably to provide mental health services for District residents such as the Plaintiff.[1] *Id*.; *see* Am. Compl. at 6.  The Plaintiff lived at Shalom House, a residence operated by S.O.M.E.[2]  *See* Am. Compl. at 6-7.  He apparently was dissatisfied with certain S.O.M.E. employees and services, and he "filed grievance(s)/complaints against [S.O.M.E.]."  *Id*. at 7; *see* Compl. at 5.  According to the Plaintiff, S.O.M.E. not only ignored his grievances, but also retaliated against him, beginning with Margaret Simmons's call to the DBH's Health's Access Helpline on December 2, 2010, Compl. at 2; *see* Am. Compl. at 7, "purportedly seeking cris[i]s assistance for [the Plaintiff]," Am. Compl. at 4.

Walker took the call, and in the course of his conversation with Simmons, Walker allegedly "disclosed the plaintiff's mental health information," *id*. at 4-5, and Simmons wrongfully obtained this information, *id*. at 12, without the Plaintiff's permission, *see id*. at 5, 8, 12-13; Compl. at 2.  Walker referred Simmons to Green Door, whose staff members in turn "disclosed protected health information . . . to Margaret Simmons [and] Ann Chauvin," Compl. at 3, S.O.M.E.'s Chief Medical Officer, Am. Compl. at 1.  In the course of these conversations, either Green Door or DBH staff "told or disclosed that [the Plaintiff] had not taken his meds for months[,]" and disclosed his diagnosis.  Compl. at 3.

---

[1]  The Plaintiff has been diagnosed with paranoid schizophrenia and cocaine dependence.  *See* Pl.'s Mot. Opposing Green Door's Mot. to Dismiss at 33 (page numbers designated by ECF); Pl.'s Mot. Opposing Moving Parties['] Motion to Dismiss at 40, 45  (page numbers designated by ECF).

[2]  The events described in the Plaintiff's pleadings allegedly were part of "a vendetta" against him "hatched by [S.O.M.E.] (administrators) simply because he filed a grievance against their organization[.]"  Pl.'s Mot. Opposing Moving Parties['] Mot. to Dismiss at 24.  In addition to the December 2, 2010 telephone call to the Access Helpline and the January 13, 2011 incident, the Plaintiff points to eviction proceedings initiated by S.O.M.E. in the Superior Court of the District of Columbia, *see* Compl. at 4-5; Pl.'s Mot. Opposing Green Door's Mot. to Dismiss at 38-39, as another retaliatory act, *see* Compl. at 4-5; Pl.'s Mot. Opposing Green Door's Mot. to Dismiss at 4.  The Plaintiff disputes S.O.M.E.'s claim that he threatened a night manager with physical harm on November 28, 2010, Compl. at 4, and "pulled a razor" on S.O.M.E. staff members, *id*. at 5.  He considers these claims as evidence of their efforts to "'get rid of [him]' (not for threatening behavior, but for filing grievances/complaints against S.O.M.E., hoping that they would breeze thru LTC (Landlord Tenant Court[]) figuring that [he] would be at St. Elizabeth['s Hospital,]" *id*.

According to the Plaintiff, "Ann Chauvin, Suzanne Bond and Belinda Sealey 'concocted a story,'" Compl. at 3, and "made false allegations to the [Metropolitan Police Department], causing [him] to be deprived of his liberty," Am. Compl. at 5. "Chauvin initiated [a] referral (as if the plaintiff is bi-polar or psychotic)," prompting the Department of Behavioral Health to dispatch a Mobile Crisis Team to Shalom House on January 13, 2011. Am. Compl. at 5; *see* Pl.'s Mot. Opposing Green Door's Mot. to Dismiss, Ex. 2. Chauvin reported that she and two other S.O.M.E. staff members found notes under their office doors from the plaintiff using "threatening words such as 'murder' and 'die.'" Pl.'s Mot. Opposing Moving Parties['] Motion to Dismiss at 30 (page numbers designated by ECF). The Plaintiff reportedly became "increasingly agitated," *id*. at 31, and these staff members felt "threatened and sufficiently concerned such that [they] made a call to the [Department of Behavioral Health] Mobile Crisis Team," *id*. at 30.

The Mobile Crisis Team arrived at Shalom House with police officers. *Id*. They handcuffed the Plaintiff and transferred him to the Comprehensive Psychiatric Emergency Program (CPEP), described by the Plaintiff as "a psych ward," Am. Compl. at 4, by ambulance and accompanied by police officers, *see id*. at 6; Compl. at 4. According to Amelia Villaruz, M.D., who conducted a psychiatric evaluation of the plaintiff on January 13, 2011, the Plaintiff's "speech [was] rambling and pressured with disorganized thoughts and loose associations." Pl.'s Mot. Opposing Moving Parties['] Motion to Dismiss at 40. She reported that the Plaintiff had "no insight to his illness," and he "refused medications ordered." *Id*. This was the Plaintiff's fifth admission to CPEP. *Id*. He refused to take prescribed medications over the next two days, and "continue[d] to be delusional and [easily] agitated when approached." *Id*. at 41. Dr. Villaruz certified that the Plaintiff exhibited symptoms of mental illness and, as a result, he was

3

likely to injure himself and others if he were not detained immediately. *See id*. at 42. He was subsequently "transferred to PIW (Psychiatric Institute of Washington) for 4 days [and was] forced [to take] meds (in heavy dosages.)." Am. Compl. at 4; *see* Compl. at 4. The Plaintiff was discharged on January 19, 2011, at which time he was "stable and improved" and "compliant with the medications." Pl.'s Mot. Opposing Moving Parties['] Motion to Dismiss at 45. He no longer "[met] criteria for [involuntary] commitment and refuse[d] to be a voluntary inpatient." *Id*.

The Plaintiff appears to bring two claims. First, he alleges that "the defendants conspired to deprive him of his liberty." Am. Compl. at 4 (emphasis omitted); *see id*. at 9; *see* Compl. at 4. The court construes these allegations as a civil rights claim under 42 U.S.C. § 1983 for violations of rights protected by the Fourth and Fifth Amendments to the United States Constitution. Second, insofar as the defendants obtained and disclosed mental health information about the Plaintiff without his permission, the Court construes the Amended Complaint as bringing claims under the Health Insurance Portability and Accountability Act ("HIPAA"), *see* 42 U.S.C. § 1320d-6, and the District of Columbia Mental Health Information Act ("DCMHIA"), *see* D.C. Code § 7-1201.01 *et seq*. The Plaintiff demands compensatory and punitive damages totaling $16,500,000. Am. Compl. at 12.

The Clerk of Court received the Plaintiff's original complaint and application to proceed *in forma pauperis* on December 11, 2013. The court granted the Plaintiff's application by order signed on January 7, 2014, and the Clerk of Court officially filed these documents on the Court's electronic docket on January 30, 2014. The Court dismissed the complaint, and the Plaintiff appealed the decision to the United States Court of Appeals for the District of Columbia Circuit. The Circuit ordered:

> that the case be remanded for the district court to reconsider the dismissal of [the plaintiff's] complaint for lack of subject matter jurisdiction. [The plaintiff's] complaint alleges that the defendants, at least one of whom is alleged to be a District of Columbia employee, wrongfully disclosed his medical information and deprived him of his liberty by making false allegations to the police. The civil cover sheet accompanying the complaint cites 42 U.S.C. § 1983 as the civil statute under which the case of action was filed. It appears, therefore, that [the plaintiff] was attempting to invoke the district court's jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) . . . . But if [the plaintiff] were to file a new complaint stating the basis for the district court's jurisdiction, the complaint would be time-barred . . . . Accordingly, in the interest of justice, the district court is directed to allow [the plaintiff] to amend his complaint to clearly state the jurisdictional basis for this action and all of the claims [he] is attempting to raise . . . .

*Brown v. Hill*, No. 14-7028 (D.C. Cir. filed July 25, 2014) (per curiam). The Plaintiff filed his Amended Complaint on November 21, 2014.

## II. DISCUSSION[3]

### A. *There Is No Private Right of Action Under HIPAA*

Green Door and Walker move to dismiss the Plaintiff's HIPAA claims on the ground that there is no private cause of action under that statute. S.O.M.E. moves to dismiss the Plaintiff's HIPAA claim on the ground that his amended complaint fails to allege facts to show that S.O.M.E. is a covered entity that is required to protect his health care records.

"HIPAA generally provides for confidentiality of medical records." *Acara v. Banks*, 470 F.3d 569, 571 (5th Cir. 2006) (citing 42 U.S.C. §§ 1320d-1 to d-7). It does not create a private right of action. *Id.*; *Hudes v. Aetna Life Ins. Co.*, 806 F. Supp. 2d 180, 196 (D.D.C. 2011) ("In light of the statutory language of § 1320d–5 and the apparent consensus among the courts that

---

[3] For purposes of this Memorandum Opinion, the court presumes without deciding that all the defendants have been served with process.

have considered the question, this Court finds that Plaintiff has no private HIPAA right of action."), *aff'd,* 493 F. App'x 107 (D.C. Cir. 2012); *Runkle v. Gonzales*, 391 F. Supp. 2d 210, 237 (D.D.C. 2005) (concluding "that there is no private right of action under HIPAA of which the plaintiff can avail himself"). Rather, an individual's "only redress for an alleged HIPPA violation is to lodge a written complaint with the Secretary of Health and Human Services, through the Office for Civil Rights, which has the discretion to investigate the complaint and impose sanctions, both civil and criminal." *Johnson v. Kuehne & Nagel Inc.*, No. 11-cv-02317, 2012 WL 1022939, at *5 (W.D. Tenn. Mar. 26, 2012) (citing 45 C.F.R. § 160.306); *see Royce v. Veterans Affairs Regional Office*, No. 08-1993, 2009 WL 1904332, at *6 (D. Colo. July 1, 2009) (noting that "HIPPA expressly provides the penalties for improper disclosures of medical information . . . and limits enforcement to the Secretary of HHS"); *Hudes*, 806 F. Supp. 2d at 196 (noting that it is "the Secretary's prerogative to impose penalties for violations of HIPAA").

In light of the foregoing legal authority and the Plaintiff's subsequent clarification that he "is not suing the blameworthy defendants for violating HIPAA," Pl.'s Mot. Opposing Green Door's Mot. to Dismiss at 10, the Court will dismiss the Plaintiff's HIPAA claims.

### B. The D.C. Mental Health Information Act Claim Is Time-Barred

A claim under the DCMHIA, *see* D.C. Code § 7-1201.01 *et seq.*, must be brought within one year. D.C. Code § 12-301(9). It appears that any claim the Plaintiff could have brought under the DCMHIA accrued as early as December 2, 2010, the date of Simmons's call to the Access Helpline, but not later than January 13, 2011, the date on which the Plaintiff was taken away from Shalom House in handcuffs. In these circumstances, the filing of the Plaintiff's initial complaint on December 11, 2013, roughly three years after his cause of action arose, is untimely. Therefore, the Court will dismiss the Plaintiff's claim under the DCMHIA.

### C.  The Plaintiff Fails to Allege § 1983 Claims

#### 1.  Dismissal Under Rule 12(b)(6)

A complaint is subject to dismissal if it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A plaintiff need only provide a "short and plain statement of [his] claim showing that [he] is entitled to relief," Fed. R. Civ. P. 8(a)(2), that "'give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curium) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  In other words, it must "plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Patton Boggs LLP v. Chevron Corp.,* 683 F.3d 397, 403 (D.C. Cir. 2012) (internal quotation omitted).  Although a complaint filed by a *pro se* plaintiff is "to be liberally construed," *Erickson*, 551 U.S. at 94 (internal citation omitted), it, too, must set forth factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

#### 2.  Elements of a § 1983 Claim

In relevant part, 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Id*.  Section 1983 is not itself a source of substantive rights; rather, it is a method of vindicating federal rights conferred elsewhere.  *Albright v. Oliver*, 510 U.S. 807, 811 (1994); *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).

To state a claim under § 1983, a complaint must allege facts sufficient to show that a person acting under color of State or District of Columbia law committed an action which deprived the plaintiff of rights protected under the United States Constitution or federal law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988).  A "person" for purposes of § 1983 can be a municipality, such as the District of Columbia, *see Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 690 (1978) (defining "person" to include municipalities and local government entities), and a private party may act under color of state or District of Columbia law if it is "a willful participant in joint activity with the State or its agents," *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970) (internal quotation marks and citation omitted).

The court begins by identifying the specific constitutional right that the defendants allegedly infringed.  *See Graham v. Connor*, 490 U.S. 386, 394 (1989); *see also Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003) ("All that is being established at this stage is that there is some constitutional harm suffered by the plaintiff, not whether the municipality is liable for that harm.").  Based on the Plaintiff's allegations that the defendants conspired to deprive him of his liberty, *see generally* Am. Compl. at 4-6, as stated above, the court will read the complaint to allege violations of his rights under the Fourth and Fifth Amendments to the United States Constitution.

### 3.  The Claims Against Green Door and Walker Are Not Time-Barred

Green Door and Walker note that they became parties to this action when the Plaintiff filed his Amended Complaint on November 12, 2014.  The claim against Green Door pertains to

Plaintiff's alleged false imprisonment on January 13, 2011, *see* Green Door Mot. at 9, and the claim against Walker arises from a telephone conversation occurring on December 2, 2010 of which the Plaintiff learned on January 11, 2011, *see* Am. Compl. at 4, 19.  Green Door and Walker argue that a three-year statute of limitations applies to a claim under § 1983, and that the claims set forth against them in the Amended Complaint are time-barred.  *See* Green Door Mot. at 8-9; Walker Mot. at 3-4.

"Since Section 1983 does not have a built-in statute of limitations, the general three-year statute of limitations imposed by District of Columbia law on claims for personal injury, *see* D.C. Code § 12-301(8), applies."  *Proctor v. District of Columbia*, 74 F. Supp. 3d 436, 457 (D.D.C. 2014) (citations omitted); *see Earle v. District of Columbia*, 707 F.3d 299, 305 (D.C. Cir. 2012) (applying three-year residual statute of limitations to § 1983 claim).  However, Plaintiff relies on D.C. Code § 7-1205.04, which authorizes an action in the Superior Court to compel access to a client's mental health records if a mental health professional denies access to them within six months of the denial of access.  *See* Pl.'s Mot. Opposing Green Door's Mot. to Dismiss at 14.   Without his health records, Plaintiff argues, he "could not effectively bring his cause of action."  *Id*.  He argues that, because he filed this action within six months of the Superior Court's July 7, 2014 order, his claims are timely.  *See id*.  However, as Walker points out, the Plaintiff cites no authority either for the proposition that a six-month statute of limitations applies to a claim under § 1983, or that the limitations period began to run after the Superior Court's decision.  Def. David Walker's Reply to Pl.'s Opp'n to his Mot. to Dismiss at 1,

The court is mindful of the D.C. Circuit's remand order, particularly its observation that, if Plaintiff were to have filed a new complaint with 42 U.S.C. § 1983 as a basis for this Court's jurisdiction, the complaint would have been time-barred.  In the interest of justice, the D.C.

Circuit directed this court to allow Plaintiff an opportunity to amend his complaint.  Under these circumstances, the court will treat the allegations of the Amended Complaint as relating back to the original complaint filed on December 11, 2013.  Therefore, the Plaintiff's § 1983 claims against Green Door and Walker are timely filed.[4]

Although the court declines to dismiss Plaintiff's § 1983 claims as time-barred, there are other grounds on which to dismiss them.

### 4. Green Door

Green Door summarizes Plaintiff's claim as one alleging that it "supplied his individually identifiable health information to the [DBH and S.O.M.E.]," and from this he "loosely concludes that [their] action was a conspiracy . . . resulting in the denial of his liberty interest within the Due Process Clause of the Fifth Amendment to the Constitution."  Green Door Mot. at 6.  It moves to dismiss on two grounds: that the complaint fails to allege the existence of a civil rights conspiracy, *id.*, and that it is not a "state actor" for purposes of § 1983.  *See id.* at 7.

"A person may be considered a state actor for purposes of section 1983 if he is a willful participant in joint activity with the State or its agents, if there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself, or where there is a transfer of State authority."  *Edwards v. Okie Dokie, Inc.*, 473 F. Supp. 2d 31, 40-41 (D.D.C. 2007) (internal quotation marks and citations omitted).  Nothing in the Plaintiff's complaint suggests that any action by Green Door or its staff is attributable to the District of Columbia itself.

---

[4]  To the extent that the Plaintiff may intend to raise a false imprisonment claim, *see* Am. Compl. at 9, it would be time-barred.  The statute of limitations for this tort claim is one year, D.C. Code § 12-301(4), which would have expired on or about January 13, 2012, assuming that the statute of limitations would not have been tolled, for example, due to the Plaintiff's disability, *see* D.C. Code § 12-302(a).

The Plaintiff's success also depends on the existence of a conspiracy, and to this end his complaint must allege "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme." *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983) (citation omitted). Plaintiff's conclusory assertions of the existence of an agreement among the purported conspirators cannot sustain a conspiracy claim.  Furthermore, the Plaintiff clarifies that he "never stated nor alleged that Green Door and the [DBH] did anything together." Pl.'s Mot. Opposing Green Door's Mot. to Dismiss at 2.  Rather, he contends, Green Door supplied his mental health information to the "chief conspirators," referring to Ann Chauvin and S.O.M.E.  *Id*.  At most, the Plaintiff alleges that Green Door conspired with S.O.M.E., and collusion between private entities is not state action for purposes of § 1983.  The court therefore will grant Green Door's motion to dismiss the Plaintiff's § 1983 claim.

b. S.O.M.E.

S.O.M.E. asserts that the Plaintiff does not allege that it violated his constitutional rights; rather, according to his pleadings, "the District of Columbia police with representatives of the District of Columbia Mental Health Mobile Crisis Service. . . removed plaintiff . . . without any further intervention by [S.O.M.E.]." S.O.M.E. Mot. at 4-5.  It points to the DBH and the Metropolitan Police Department as the culprits, who independently "determined that plaintiff required removal to CPEP," and necessarily rejected alternative courses of action, such as leaving the scene or arresting the Plaintiff.  *Id*. at 5.  Even though a S.O.M.E. staff member "may have made the initial call" to the DBH, S.O.M.E. was "not the proximate cause of plaintiff's being held" either at CPEP or later at the Psychiatric Institute of Washington.  *Id*.

Plaintiff deems S.O.M.E. "the 'actual cause' of the plaintiff being held at CPEP and PIW." Pl.'s Mot. Opposing Moving Parties' Mot. to Dismiss at 5-6. "[T]heir lies or false allegations made to the police and to the Dep[artment] of [Behavioral] Health . . . officials[,] misleading them to act," caused him to be handcuffed and taken to CPEP. *Id*. at 6.

"Tort law proximate cause principles apply to § 1983 action," and "[p]roximate cause requires both a causal relationship between the [wrongful] act and the plaintiff's injury and foreseeability of the injury." *Elkins v. District of Columbia*, 610 F. Supp. 2d 52, 61 (D.D.C.) (citations omitted), *clarified on denial of reconsideration*, 636 F. Supp. 2d 29 (D.D.C. 2009), *aff'd,* 690 F.3d 554 (D.C. Cir. 2012). However, "if there exists a superseding cause, or 'an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent wrongful act was a substantial factor in bringing about.'" *Murray v. Earle*, 405 F.3d 278, 291 (5th Cir. 2005) (citing Restatement 2d of Torts § 440-41 (1965)). The court agrees with the S.O.M.E.'s position that their call to the Access Helpline was not the proximate cause of the alleged violations of the Plaintiff's Fourth and Fifth Amendment rights. Rather, based on the Plaintiff's own submissions, it appears that the mental health professionals and police officers determined based on their interaction with the Plaintiff on January 13, 2011, that his involuntary commitment was warranted. "Only those who cause a violation of a right secured by the Constitution are liable." *Elkins v. District of Columbia*, 690 F.3d 554, 564 (D.C. Cir. 2012) (citing *Iqbal*, 556 U.S. at 676), and the Plaintiff does not set forth sufficient factual allegations to show S.O.M.E.'s liability.

### III. CONCLUSION

The Court concludes that the Plaintiff's complaint fails to state claims under the Health Insurance Portability and Accountability Act, the District of Columbia Mental Health

Information Act, and 42 U.S.C. § 1983. The defendants' motions to dismiss will be granted. An Order is issued separately.

*Tanya S. Chutkan*

DATE: March 28, 2016

TANYA S. CHUTKAN
United States District Judge