**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MELVIN BROWN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| v. | )    Case No: 14-00140 (TSC) |
| | ) |
| | ) |
| SANDRA HILL, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF MELVIN BROWN'S MOTION FOR LEAVE
TO FILE PLAINTIFF'S FOURTH AMENDED COMPLAINT**

Comes now Plaintiff Melvin Brown, by and through undersigned counsel, to move this Court to grant its leave to file Plaintiff's Fourth Amended Complaint. As reasons shy this motion should be granted, Plaintiff states the following:

In this Fourth Amended Complaint Plaintiff adds additional facts that identify another psychiatrist who played a role in what Plaintiff contends was his illegal detention at the Psychiatric Institute of Washington ("PIW"). Based on reports and records in the possession of the District of Columbia, Plaintiff is now able to identify Dr. Phuong Thu Vo as a psychiatrist who filed the formal application for Plaintiff's involuntary commitment to PIW. Plaintiff alleges that this application was filed in the absence of an adequate examination and was based on the same false and erroneous information that was used for his arrest and initial detention and remains a part of this case. Plaintiff further alleges a separate count of *respondeat superior* against Dr. Vo's employer at all relevant times, the District of Columbia.

In all other respects, Plaintiff's Fourth Amended Complaint clarifies counts that already are a part of the complaint. These amendments do not alter the substance of the allegations or theories, only parsing out one specific theory while amplifying aspects of another. To this end, one amendment sets out separate theories of *respondeat superior* against the District of Columbia based on the allegations made against Amelia Villaruz, MD and Dr. Phuong Thu Vo. The final amendment clarifies the allegations raised under 42 U.S.C. Sect. 1983 predicated on the defendant's violations of *HIPAA*. Otherwise, this iteration of the complaint makes no further changes.

Plaintiff, proceeding *pro se*, filed suit on January 30, 2014, naming numerous defendants involved with his involuntary commitment to CPEP and later the Psychiatric Institute of Washington. Following an appeal to the United States Court of Appeals for the District of Columbia Circuit, on October 22, 2014, this Court ordered Plaintiff to file an amended complaint setting forth the Court's jurisdictional basis and those claims he was attempting to raise. On November 21, 2014, Plaintiff filed his amended complaint. After much litigation between the parties, on March 28, 2015, this Court dismissed Plaintiff's complaint, prompting another appeal to the D.C. Circuit on April 27, 2016. On April 3, 2017, the D.C. Circuit reversed the judgment of the Court and remanded the case to this Court. On May 18, 2017, Plaintiff filed a motion to re-open the case. Oppositions and replies were filed, and the Court reopened the case on March 19, 2018.

Plaintiff has raised numerous claims against numerous employees of agencies and contactors responsible for his care in the District of Columbia's mental health system. These contractors include So Others Might Eat ("SOME") and Green Door, two entities who contract with the District of Columbia. Also named as a defendant was an employee of the District of

Columbia, David Walker. Identified in the original complaint though not named as specific defendants were Amelia Villaruz, MD, Isha Edwards and William Peters. All were employees of the District of Columbia for all relevant time periods. These parties were later named as defendants in the action. *See* Dkt. Entry #47 at p26. Now, Plaintiff adds another psychiatrist employed by the District of Columbia, Dr. Phuong Thu Vo. These additional defendants who were named as defendants in the most recent amendments to Mr. Brown's complaint have not been served in this action. Plaintiff awaits an order to issue summonses for these defendants.

All events that are the subject of this lawsuit are based on Plaintiff's arrest, involuntary commitment, hospitalization and forcible medication that began on or about January 13, 2011, and the preceding illegal disclosure of his protected mental health information. Plaintiff raised numerous constitutional, common law and statutory theories that are addressed in this Fourth Amended complaint. In an effort to elaborate on the theories raised in the previous complaint, in the Second Amended Complaint Plaintiff added facts to support a theory of a pattern and practice of the District of Columbia that resulted in a deprivation of his constitutional rights and by failing to consider a less restrictive alternative, clarified the basis for liability by reforming both constitutional, statutory and common law claims, and added additional defendants who were identified in earlier complaints. Dkt. Entry #47 at2 p. 24.

Defendants Green Door, *et al*., SOME, et al. and David Walker all opposed the previous motion to amend the complaint. In part, Green Door and SOME argued that their respective entities could not be held liable because Plaintiff failed to allege facts that would plausibly "prove" state action. *See* Dkt. Entries 73 and 75. All argued that many claims were time barred, and that Plaintiff failed to allege sufficient facts to sustain the common law theories of

3

intentional and negligent infliction of emotional distress. *See* Dkt. Entries 73,75 and 76. A redlined version detailing all amendments to the complaint accompanies this motion.

## ARGUMENT

Legal Standard:

"A party may amend its pleading once as a matter of course" before the adverse party has filed a responsive pleading. Fed.R.Civ.P. 15(a). However, after a responsive pleading has been filed, the initial pleading may be amended "only with the opposing party's written consent or the court's leave." *Id* . While the Court has sole discretion to grant or deny leave to amend, "[l]eave to amend a [pleading] should be freely given in the absence of undue delay, bad faith, undue prejudice to the opposing party, repeated failure to cure deficiencies, or futility." *Richardson v. United States*,193 F.3d 545, 548-49 (D.C. Cir. 1999) (citing *Foman v. Davis*,371 U.S. 178, 182 (1962)).

The rationale for this perspective is that "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."*Foman* , 371 U.S. at 182. The D.C. Circuit has adopted a liberal approach to the amendment of pleadings to ensure that claims will be decided on the merits rather than on technicalities. *Belizan v. Hershon*, 434 F.3d 579, 582 (D.C. Cir. 2006). None of the factors precluding an amendment to this complaint are present here.

 The party opposing the Rule 15 motion bears the burden of showing that leave to amend should be denied. *See Shea v. Clinton*,288 F.R.D. 1, 4 (D.D.C. 2012) (citing *In re Vitamins Antitrust Litigation*, 217 F.R.D. at 32). Moreover, prejudice to the party opposing the amendment must be substantial in that the amendment must cause a serious impairment of the non-movant's ability to present its case. Cf. *Djourabchi v. Self*, 240 F.R.D. 5, 13-14 (D.D.C.

4

2006); *Atlantic Bulk Carrier Corp. v. Milan Express Co., Inc.,* No. 3:10cv103, 2010 WL

2929612, at *4 (E.D. Va. 2010). Pertinent considerations in analyzing whether "undue prejudice"

exists include: whether the proposed amendment (1) "substantially changes the theory on which

the case has been proceeding and is proposed late enough so that the opponent would be required

to engage in significant new preparation;" (2) requires the defendant to expend significant

additional resources to conduct discovery and prepare for trial; and (3) will significantly delay

the resolution of the dispute. *See Djourabchi*, 240 F.R.D. at 13. None of these factors are present

here.

     In this motion to amend, Plaintiff will substantially meet all of the elements discussed

above. This amendment will not result in any undue delay to the litigation and is not being made

in "bad faith." Plaintiff's motion does not represent repeated failures to cure deficiencies. In

pertinent part as to these amendments, if granted, this motion will not result in undue prejudice to

any defendant and will not result in futility of the claims.

     A) <u>Defendants will not suffer undue prejudice:</u>

     The amendments proposed in this motion will not require any additional expenditure of

resources or discovery and will not delay resolution of the dispute. Indeed, at this stage of the

proceedings defendants would not be required to engage in additional preparation. Neither a trial

date nor even a scheduling order have been set or entered. Equally so, defendants cannot

complain that these amendments would result in undue prejudice to the defendants. These

amendments do not change or alter the theories in the case that would require additional

preparation, would not require additional discovery and will not cause any delay in resolving the

issues in this case. Indeed, because these amendments are being raised early in the litigation

process none of the preceding issues are implicated.

B) <u>For many of the same reasons articulated in prior motions, these amendments would not be futile. These amendments add additional facts and theories that relate back to a timely filed complaint under Fed.R.Civ.P. 15(c), and otherwise only amplify prior counts without changing or altering the theories of liability.</u>

a)      These amendments first add facts that identify an additional psychiatrist

responsible for Plaintiff's commitment to PIW. In paragraph 40 of the Fourth Amended

Complaint, Plaintiff alleges:

> On the next day, January 14, 2011, another psychiatrist from DMH CPEP, Dr. Phuong Thu Vo prepared an application for emergency hospitalization directed to Psychiatric Institute of Washington. This report restates the previous allegations without noting any present conditions. The application again reports that Plaintiff was brought to CPEP based on reports of aggressive behavior and "pulling a razor" on staff. The author again parrots other reports that described the threatening notes and his failure to maintain  his treatment plan with Green Door. Because of these reports, this psychiatrist concluded that Plaintiff lacked insight into his illness and possessed poor judgement and considered a danger to himself or others. Therefore, accord Dr. Phuong requested emergency hospitalization. This determination again lacked any personal observation or assessment of Plaintiff.

The facts underlying this allegation were contained in reports in custody and control of the

District of Columbia. Thus, the information either was known to the District of Columbia and

Dr. Vo or should have been known to these parties.

In this case, the allegations raised against defendant Dr. Vo in the Fourth Amended

Complaint "relate back" to the time of the original filing on December 11, 2013. Under Fed. R.

Civ. P. 15 (c):

> (c) RELATION BACK OF AMENDMENTS.
>
> (1) *When an Amendment Relates Back.* An amendment to a pleading relates back to the date of the original pleading when:
>
> (A) the law that provides the applicable statute of limitations allows relation back;

6

(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or

(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

(i) received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Under these rules a new defendant can be added to a complaint beyond the statute of limitations under the "mistaken identity doctrine" to avoid the harsh consequences of a mistake that was neither prejudicial nor a surprise to the misnamed party. *Rendall-Speranza v. Nassim,* 107 F.3d 913 (D.C. Cir. 1997).   The Supreme Court has since clarified the inquiry, emphasizing that courts must determine whether the prospective defendant should have known of the possibility that it would be sued despite the plaintiff's mistake. *Krupski v. Costa Crociere* 130 S. Ct. 2485, 2493 (2010)("Rule 15(c)(1)(C)(ii) asks what the prospective defendant knew or should have known . . . not what the plaintiff knew or should have known at the time of filing her original complaint.").

In this case, even though Amelia Villaruz remains culpable for all that transpired at CPEP, including Plaintiff's commitment to PIW, Plaintiff was mistaken in not apprehending Dr. Vo's role in his commitment. These reports, however, implicate Dr. Vo as the psychiatrist who made the application to PIW for Plaintiff's admission into that facility. Like all previous records and applications, Dr. Vo's statement replicates the misleading statement that Plaintiff pulled a razor on staff and that this justified his emergency, and involuntary, admission into PIW. Not only were the underlying allegations false, Dr. Vo did not make any further justification for the

application. This did not meet the heightened standard for involuntary commitment under the *Ervin Act*, D.C. Code Sect. 21-501 *et seq.* (1981 ed.).

The records shedding light on Dr. Vo's role were and remain in the possession custody and control of the District of Columbia. Moreover, at all relevant time periods Dr. Vo was an employee of the District of Columbia and thus amenable to representation by the Office of the Attorney General for the District of Columbia ("OAG"). *Rendall-Speranza v. Nassim,* 75 F.Supp.3d 913. 917-18 (D.C. Cir. 1997); *Cooper v. Henderson,* 174 F.Supp.3d 193 (D.D.C. 2016); *Kangethe v. D.C.,* 75 F. Supp. 3d 433 (D.C.C. 2014). In this case, the D.C. Office of the Attorney General has entered their appearance on behalf of defendant David Walker and has been served with all pleadings in this litigation. Thus, it is more than reasonable that given the allegations that detailed the Plaintiff's arrest and involuntary commitment that provide the basis for this lawsuit both the District of Columbia and Dr. Vo either knew or should have known of this cause of action.

> C) Plaintiff raises two distinct theories of liability under the due process clause of the United States Constitution and 42 U.S.C. Sect 1983. First, Plaintiff has alleged a wanton disregard of statutory protections that trammeled upon Plaintiff's privacy. Second, because the "Privacy Rule" of HIPAA creates a protected right to the protection of his health information, Plaintiff may file a cognizable claim under 42 U.S.C. Sect. 1983.

In Count XIV, Plaintiff's theories arising under violations of *HIPAA* are raised.[1] In this complaint Plaintiff alleges that disclosing Plaintiff's protected information violated Plaintiff's substantive due process rights through the violation of *HIPAA* 42 U.S.C. §§ 1320d-1 to d-7. *See Silverman v. Barry,* 845 F.2d 1072 (D.C. Cir. 1982). Even so, Plaintiff has again moved to

---

[1] Count XIV is captioned violation of statute and is raised under 42 U.S.C. 1983 as defined in jurisdictional statement. Plaintiff will file to Fourth Amended Complaint with the primary focus of adding defendants and again clarify this violation of statute created right under 42 U.S.C. Sect. 1983.

further amend the complaint to clarify the two theories that the violation of *HIPAA* resulted in a cognizable cause of action. Plaintiff first clarifies the theory that the wanton disregard for protected rights resulted in a deprivation of Plaintiff's right to due process of law. Second, and no less important, Plaintiff's amendments clarify that *HIPAA* creates protected rights in the privacy of mental health records, and that these rights create cognizable claims under 42 U.S.C. Sect. 1983. We shall address these theories in turn.

a) Under the first theory, Plaintiff alleges that the guiding purpose behind *HIPAA* is to protect from disclosure a person's protected health information. The D.C. Department of Mental Health ("DMH" now Behavioral Health) is charged with protecting from disclosure protected mental health information. Indeed, mental health information is afforded special protection under the statute. 45 C.F.R. 164.508, 524, and 526. Thus, as shown in this case the blatant and obvious disclosure of sensitive health information violates due process of law.

While true, every violation of law does not rise to the level of a violation of substantive due process. *Silverman v. Barry* states: 845 F.2d at 1080, however, states:

> To succeed in a Sect. 1983 suit for damages for a substantive due process or equal protection violation, a plaintiff must at least show that state officials are guilty of grave unfairness in the discharge of their legal responsibilities. Only a substantial infringement of state law prompted by personal or group animus, or a deliberate flouting of the law that trammels significant personal or property rights, qualifies for relief under Sect. 1983. *See, e.g., Scott v. Greenville County*, 716 F.2d 1409, 1416 (4th Cir.1983) (stating that "[d]espite the great deference accorded local officials in zoning and land use matters, their decisions and official actions are not exempt from the constitutional command to be free of racial discrimination."). Inadvertent errors, honest mistakes, agency confusion, even negligence in the performance of official duties, do not warrant redress under this statute. *See Ortega Cabrera v. Municipality of Bayamon,* 562 F.2d 91, 103 (1st Cir.1977) (upholding dismissal of Sect. 1983 equal protection claim because "there has been no showing of the kind of purposeful, malicious action which is a prerequisite to any such damages recovery").

*Silverman v. Barry,* 845 F.2d 1072, 1080 (D.C. Cir. 1988).

In this case, the blatant, unjustified and illegal disclosure of Plaintiff's personal mental health information was the result of defendants' deliberate flouting of the law that trammeled significant rights that are protected by statute. Indeed, the action here was deliberate and was not the result of inadvertent error, honest mistake, agency confusion or negligence. Defendants were charged with knowledge of the *HIPPA* and its protections against unjustified disclosure. Instead, they deliberately and wantonly violated the law.

b) Second, Plaintiff alleges that the unauthorized disclosure violated the Privacy Rule under the *Health Information Portability and Accountability Act*, 42 U.S.C. 1320d-6, 45 CFR 160 & 164 ("HIPAA") and that the defendants are liable for the disclosure under 42 U.S.C. Sect. 1983. Fourth Amended Compl., Count XIV. Defendants have argued that no violation occurred. Assuming a violation occurred as Plaintiff alleges, a closer reading of the statute, its operative regulations and controlling precedence indicate a constitutional violation under 42 U.S.C. Sect. 1983.

In *Blessing v. Freestone,* 520 U.S. 329 (1997), the Supreme Court delineated three factors controlling a court's determination of whether a federal statute creates a "right" enforceable under § 1983. "First, Congress must have intended that the provision in question benefit the plaintiff." *Id.* "Second, the plaintiff must demonstrate that the right asserted[ ] protected by the statute is not so vague and amorphous' that its enforcement would strain judicial competence." *Id.* at 340-41 (citation omitted). "Third, the statute must unambiguously impose a binding obligation on the States, " using "mandatory, rather than precatory, terms." *Id.* at 341. This analysis was later refined in *Gonzaga v. Doe,* 536 U.S. 273 (2002) in which the Court held that the statute at issue must be "unmistakabl[y] focus[ed] on the benefitted class." *Id.* at 284. "Statutes that focus on the person regulated rather than the individuals protected create no

implication of an intent to confer rights on a particular class of persons." *Alexander v. Sandoval,*

*532 U.S. 273,* 289 (2001). *HIPAA* creates such a substantive and enforceable right to privacy of

protected health information.[2]

In the preamble to the "Privacy Rule" as expressed in U.S. Department of Health and

Human Services ("HHS") implementing regulations, HHS states:

> In an era where consumers are increasingly concerned about the privacy of their
> personal information, the Privacy Rule creates, for the first time, a floor of national
> protections for the privacy of their most sensitive information--health information.
> Congress has passed other laws to protect consumers' personal information contained in
> bank, credit card, other financial records, and even video rentals. These health privacy
> protections are intended to provide consumers with similar assurances that their health
> information, including genetic information, will be   properly protected. Under the
> Privacy Rule, health plans, health care clearinghouses, and certain health care providers
> must guard against misuse of individuals' identifiable health information and limit the
> sharing of such information, and consumers are afforded significant new rights to enable
> them to understand and control how their health information is used and disclosed.

45 CFR 160 and 164, Fed Reg Vol. 67 No. 157 p. 53182. The language in the HHS statement

and purpose of the "Privacy Rule" [are] both unmissable and clear: "…consumers are afforded

significant *new rights* (emphasis added) to enable them to understand and control how their

health information is used and disclosed…" The purpose of the rule, as interpreted by the

administering agency, is to provide protections against the misuse and unauthorized disclosure of

"consumers" protected health information. Thus, in its statement of purpose the unambiguous

---

[2] "[T]he *Gonzaga* Court clarified the relationship between § 1983 enforceable "rights" analysis
and implied right of action analysis. *Id.* at 283. The Court explained that "whether a statutory
violation may be enforced through § 1983 is a different inquiry than that involved in determining
whether a private right of action can be implied from a particular statute." *Id.* Namely, plaintiffs
proceeding under § 1983 "do not have the burden of showing an intent to create a private remedy
because § 1983 generally supplies a remedy for the vindication of rights secured by federal
statutes." *Id.* at 284." *Duberry v. D.C.* 14 cv1258 (D.D.C. 2015)

intent of the regulation and statute is to provide a specific right to benefit a defined class of

persons that includes Plaintiff.

Second, the protected rights are clear and concrete as opposed to vague and amorphous.

Here, Plaintiff complains that defendants, contrary to the privacy protections of HIPAA,

disclosed his mental health records to aid in his removal from Shalom House, a facility operated

by SOME. The prohibitions of unauthorized disclosures are clearly expressed in 45 CFR

164.508(a)(2) which carves more restrictive protections for mental health records and

psychotherapy notes. Under this rule:

> **Authorization required: Psychotherapy notes.** Notwithstanding any provision of this
> subpart, other than the transition provisions in § 164.532, a covered entity must obtain an
> authorization for any use or disclosure of psychotherapy notes, except:
>> **(i)** To carry out the following treatment, payment, or health care operations:
>>> **(A)** Use by the originator of the psychotherapy notes for treatment;
>>> **(B)** Use or disclosure by the covered entity for its own training programs
>>> in which students, trainees, or practitioners in mental health learn under
>>> supervision to practice or improve their skills in group, joint, family,
>>> or individual counseling; or
>>> **(C)** Use or disclosure by the covered entity to defend itself in a legal
>>> action or other proceeding brought by the individual; and…

The prohibitions and protections of this section are clear, concrete and mandatory and meet this

second prong of the *Blessing* factors. Moreover, these same prohibitions on disclosure are

directed to the service providers to protect those privacy rights expressed in the *HIPAA* statute's

privacy rule.

Third, the overall operation of the statute and regulatory framework of *HIPAA*'s privacy

rule is mandatory, establishing both civil and criminal penalties for violations. These protections

are directed to protect the health information of persons needing care. The penalties for

violations depend upon the knowing culpability of covered entities that violate the law and range

from monetary fines to criminal penalties While expansive, the enforcement scheme is not comprehensive.

This case is consistent with *Garnett v. Zeilinger,* 17cv1757 (D.D.C. Aug. 23, 2018), a case in which the court held that both mandatory language of "shall" and "must," when considered some penalty for failures to comply imposed an unambiguous obligation on the government to provide the services in question. In this case, the regulations state that a covered provider "must" obtain authorization prior to any non-exempt disclosure. And with non-compliance the statute and regulations provide for some sanction. And as is *Zeilinger,* the protected class of person is just as clear. An aggrieved party is a person, such as Plaintiff, who has had their mental health records disclosed without prior authorization. These persons are easily defined by the Court.

Finally, as in *Zeilinger* the intended beneficiaries of the Privacy Rule are individuals as opposed to imposing conditions and standards on providers. Indeed, as stated in the preamble to the regulatory scheme, the purpose of the rule is to: "afford significant new rights to enable them to understand and control how their health information is used and disclosed." While placing requirements on providers to obtain authorization before disclosure, to be sure the limitation is intended to create a right to protected mental health information. *Garnett v. Zeilinger, id discussing Wilder v. Virginia Hospital Association,* 486 U.S. 498 (1990).

Neither does the enforcement scheme preclude a cause of action under 42 U.S.C. Sec. 1983. While true the statutory and regulatory scheme provide a series of civil fines and possible criminal penalties for the violations, the scheme can hardly be called sufficiently comprehensive to preclude Sect. 1983 liability. Again looking to *Zeilinger*, the court there reviewed other statutory schemes that while providing some enforcement measures were not deemed

13

comprehensive. *Zeilinger, id.* For instance, while some statutory schemes may provide for sanctions that may include revoking of federal funds against states that fail to follow administrative mandates, the absence of its own judicial remedy indicated that the remedial scheme was not sufficiently comprehensive to preclude a remedy under 42 U.S.C. Sect 1983. *Zeilinger, id discussing Wilder v. Virginia Hospital Ass'n., supra* and *Wright v. City of Roanoke Redevelopment and Housing Authority,* 479 U.S. 418 (1987). So too here. The absence of any judicial remedy outside of criminal prosecution renders *HIPAA*'s remedial scheme insufficiently comprehensive.

In this case, the violations of (due process) rights created under *HIPAA* meet the *Blessing* factors thereby raising liability under 42 U.S.C. Sect. 1983. Further, when considered in the context of the allegations in this case the result is a substantial and deliberate infringement of those rights protected by *HIPPA*. Thus, the allegations in the amended complaint state palpable claims and are not futile.

    C) <u>Plaintiff simply parses out two theories of *respondeat superior* against the District of Columbia. These court are only restatements of allegations contained in previous complaints and do not create new or otherwise alters any preceding theories against the District of Columbia for the actions of its employees.</u>

Last, Plaintiff's amendments simply parse out and set two theories of *respondeat superior* against the District of Columbia. The first theory that is based upon the negligence of Amelia Villaruz, MD was pled in the Third Amended Complaint but is now set forth in a separate count. The second is based on the new facts that allege the negligence of Dr. Phoung Thu Vo. Both doctors were employed by the District of Columbia at all relevant times, and, as alleged in the complaint, both doctors were acting within the scope of their employment when their actions resulted in the illegal commitment of Plaintiff that provides the basis of this lawsuit.

The lawsuit remains viable because the police report, or FD 12, filed in this case provided the required notice pursuant to D.C. Code Sect. 12-309. These two allegations of common law theories are viable because any notice requirement pursuant to D.C. Official Code 12-309 is met by the initial filing of the FD 12. The FD 12 provides the date, time and basis for Plaintiff's alleged detention at CPEP and later at PIW. *See Gwinn v. D.C.,* 338 A.2d 437 (D.C. 1975)(the interests served by Sect. 12-309 notice is to enable the District to promptly investigate claims and preserve evidence, correct hazardous conditions and settle meritorious claims) *also see Allen v. D.C..* 533 A.2d 1259 (D.C. 1987). This report, either with or without the subsequent filings made to the D.C. Superior Court, gave sufficient not to the District that this cause of action may lie. *Miller v. Spencer,* 330 A.2d. 250, 252 (D.C. 1974)(any notice must be made with the same specificity to comply with the purpose of the statute). In this case, no PD 251 was filed with the officers only filing the required FD 12, a report that is used in cases of involuntary commitment. This report meets all requirements.

Thus, these proposed amendments to the complaints are not futile.

## CONCLUSION

This Court should grant Plaintiff's Fourth Motion to Amend the Complaint.

Respectfully submitted,

_____/s/_____
GEORGE E. RICKMAN
DC Bar 433298
P.O. Box 21267
Kalorama Station
Washington, D.C.  20009-21267
202-258-3643
georgerick11@comcast.net
*Counsel for Plaintiff*