## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MELVIN BROWN,

      *Plaintiff,*

    v.

SANDRA HILL, *et al.*,

      *Defendants.*

Case No. 1:14-cv-0140 (TSC)

## DEFENDANT AMELIA VILLARUZ'S MOTION TO DISMISS PLAINTIFF'S FOURTH AMENDED COMPLAINT

Defendant Amelia Villaruz moves for dismissal of Plaintiff Melvin Brown's Fourth Amended Complaint for failure to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  Dismissal is appropriate for three reasons:  (1) the claims against Dr. Villaruz are barred by the statute of limitations; and (2) Plaintiff fails to state a claim against Dr. Villaruz for substantive due process violations or negligent infliction of emotional distress, and (3) Dr. Villaruz is entitled to qualified immunity on Plaintiff's claim of substantive due process violations.  Dr. Villaruz provides more detailed support for this Motion in the attached memorandum of points and authorities.  A proposed order is also attached.

February 26, 2020

Respectfully submitted

KARL A. RACINE
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Michael K. Addo*
MICHAEL K. ADDO [1008971]
Chief, Civil Litigation Division Section IV

*/s/ Philip A. Medley*
PHILIP A. MEDLEY [1010307]
Assistant Attorney General
441 Fourth Street, N.W., Suite 630 South
Washington, D.C. 20001
(202) 724-6626
(202) 741-5920 (fax)
philip.medley@dc.gov

*Counsel for Defendants David Walker and
Amelia Villaruz*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MELVIN BROWN,<br><br>      *Plaintiff,*<br><br>  v.<br><br>SANDRA HILL, *et al.*,<br><br>      *Defendants.* | Case No. 1:14-cv-0140 (TSC) |

<u>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT AMELIA VILLARUZ'S MOTION TO DISMISS PLAINTIFF'S FOURTH AMENDED COMPLAINT**</u>

**INTRODUCTION**

Plaintiff Melvin Brown brings the present Amended Complaint—his fourth here—against Green Door, Inc., as well as various individuals allegedly employed by Green Door, Inc., the District of Columbia, and So Others May Eat ("SOME"). Plaintiff alleges 18 separate counts, but only four of them are being asserted against Defendant Amelia Villaruz: "Denial of Due Process of Law-Substantive Due Process Liberty Interest Against Amelia Villaruz-Involuntary Commitment 42 USC Sect. 1983" (Count II); "Denial of Due Process of Law-Forcible Medication, 42 USC Sect. 1983-Amelia Villaruz" (Count III); Negligent Infliction of Emotional Distress (NIED) (Count VI), and Medical Malpractice (Count XIII).

The Court should dismiss all claims against Dr. Villaruz. First, the claims are barred by the statute of limitations. Second, Plaintiff failed to state a claim against Dr. Villaruz for substantive due process violations and NIED. Finally, Dr. Villaruz is entitled to qualified immunity on Plaintiff's claim of substantive due process violations.

### ALLEGATIONS PERTAINING TO DR. VILLARUZ

Plaintiff's Fourth Amended Complaint alleges an elaborate scheme by the various Defendants to have him involuntarily committed.  Plaintiff's allegations against Dr. Villaruz are in Paragraphs 36-38, and 41 of the Fourth Amended Complaint, and the gist of the allegations is that Dr. Villaruz conducted an inadequate evaluation of Plaintiff, resulting in improper recommendations.  *See* 4th Am. Compl. at ¶¶ 36-38, and 41 [ECF No. 99 at 10-12].  Plaintiff alleges that on or about January 13, 2011 he was handcuffed and taken to the Comprehensive Psychiatric Emergency Program (CPEP), where he was evaluated by Dr. Villaruz.  *Id.* at ¶¶ 35-36 [99 at 9-10].  Plaintiff claims that Dr. Villaruz's evaluation "did not include those elements that meet a standard of care that are part of an assessment of a patient."  *Id.* at ¶ 36 [99 at 10].  Plaintiff also alleges that "Dr. Villaruz's evaluation did not include a clinical interview or testing that would include Cognitive or Wechsler Adult Intelligence Scale IV, memory, personality, Minnesota Multiphasic Inventory 2F or any other evaluative tools."  *Id.* at ¶ 37 [99 at 10].  Plaintiff claims that Dr. Villaruz "relied on the FD 12 and did not make an adequate independent and personal assessment of Plaintiff for an involuntary commitment."  *Id.*  Plaintiff alleges that on or about January 14, 2011, Plaintiff refused to take medication, and Dr. Villaruz forced medication upon Plaintiff.  *Id.* at ¶ 38 [99 at 11].  Plaintiff claims that "Dr. Villaruz ordered further hospitalization [of Plaintiff] when there was no need."  *Id.* at ¶ 41 [99 at 11].

### LEGAL STANDARD

To survive a motion to dismiss, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 554, 555 (2007).  The Supreme Court has set forth a "two-pronged approach" that a trial court should use

2

when ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While a trial court generally must consider a plaintiff's factual allegations as true, the court should first "identify pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id.*  Thus, the basic pleading standards "demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* (citing *Twombly*, 550 U.S. at 555).

Once the court has determined that the plaintiff has asserted "well-pleaded factual allegations," it "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*  The Court defined "plausible" as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Id; see also Atherton v. District of Columbia*, 567 F.3d 672, 681 (D.C. Cir. 2009) (quoting passage with approval).  In other words, a plaintiff's factual allegations must allow a court to draw a reasonable inference that the defendant is liable for the misconduct alleged, if the factual allegations are proven true.  *See Matrixx Industries, Inc. v. Siracusano*, 563 U.AS. 27, 45-46 (2011).

## ARGUMENT

### I.  Plaintiff's Claims Against Dr. Villaruz are Barred by the Statute of Limitations.

All of Plaintiff's claims against Dr. Walker are barred by the statute of limitations.  Under the D.C. Code, claims for NIED and negligence-based medical malpractice must be

3

brought within three years after the accrual of the claim.  D.C. Code § 12-301(8); *Hawkins v. Greenfield,* 797 F.Supp. 30, 34 (D.D.C. 1992) (acknowledging three-year statute of limitations for NIED claims); *Canterbury v. Spence*, 464 F.2d 772, 793 (acknowledging three-year statute of limitations for negligence-based medical malpractice claims).  Additionally, claims of civil rights violations brought pursuant to 42 U.S.C. § 1983 must be brought within three years after the accrual of the claim.  *See Proctor v. District of Columbia*, 74 F.Supp.3d 436, 457 (D.D.C. 2014).

In his original Complaint, docketed on January 30, 2014 but file-stamped by the Clerk of the Court on December 11, 2013, Plaintiff alleges a "conspiracy" orchestrated by Defendant Suzanne Bond and involving the original eleven named Defendants as well as "people (employees) of the DMH (Dept of Mental Health)[.]"  Compl. [1 at 2].  Plaintiff also alleges that he was taken against his will to CPEP for two days and to the Psychiatric Institute of Washington (PIW) for another two days.  *Id.* [1 at 4].  Plaintiff claims that he was released from PIW after he "called an attorney, Ms. Sylvia Naguib" and "ask[ed] her to take [Plaintiff] in front of a judge to determine [Plaintiff's] competence (probable cause hearing)."  *Id.*  Plaintiff further alleges that "the psych doctor refused to go to open court and discharged [Plaintiff] (during the same hour) having been deprived of [Plaintiff's] liberty, saying nothing og the embarrassment and humiliation."  *Id.*  Despite having this information, Plaintiff chose not to sue Dr. Villaruz, the Department of Mental Health, or the District of Columbia in his original Complaint.  Plaintiff first named Dr. Villaruz as a defendant in his First Amended Complaint, which was filed on November 21, 2014.

The statute of limitations for all of Plaintiff's claims against Dr. Villaruz expired on or about January 14, 2014—three years after Dr. Villaruz evaluated him.  Plaintiff did not allege

any claims against Dr. Villaruz until November 21, 2014, well past the expiration of the statute of limitations for his claims.

In an apparent attempt to cure this statute of limitations issue, Plaintiff claims that on July 3, 2014 he filed a lawsuit in the Superior Court "to obtain his records pertaining to his stay at SOME and subsequent confinement at CPEP and the Psychiatric Institute of Washington."  4th Am. Compl. at ¶ 21 [99 at 3].  Plaintiff also alleges that on August 3, 2014 he "obtained the records that were the subject of his D.C. Superior Court lawsuit, providing Plaintiff the information and notice of these causes of action."  *Id*.  While Plaintiff does not specifically say so, he appears to suggest that pursuant to the discovery rule, his causes of action against Dr. Villaruz did not accrue until he acquired documentation regarding his time in CPEP on August 3, 2014.  Assuming this is Plaintiff's argument, he misapplies the discovery rule.

"As a general rule, '[w]here the fact of an injury can be readily determined, a claim accrues for purposes of the statute of limitations at the time the injury actually occurs.'"  *C.B. Harris & Co., Inc. v. Wells Fargo & Co.*, 113 F.Supp.3d 166, 170 (D.D.C. 2015) (quoting *Colbert v. Georgetown Univ.*, 641 A.2d 469, 472 (D.C. 1994)).  Courts utilize the discovery rule in situations "[w]here the injury is not apparent or the relationship between the injury and the tortious conduct is obscure[.]"  *Id*.  "The discovery rule provides that a cause of action accrues when the plaintiff has either actual notice *of her cause of action*, or is deemed to be on inquiry notice."  *Id*. (emphasis added).  "[I]nquiry notice will be charged to a plaintiff when he is aware of an injury, its cause, and some evidence of wrongdoing."  *Gardel v. A Structural Eng'rs PLLC*, 286 F.Supp.3d 120, 126 (D.D.C. 2017) (quoting *Cevenini v. Archbishop of Wash.*, 707 A.2d 768, 771 (D.C. 1998)).  "A court can deem a plaintiff to be on inquiry notice 'even if [the plaintiff] is not actually aware of each essential element of his cause of action.'"  *Id*. (quoting *Cevenini*, 707

A.2d at 771).  "Further, when multiple defendants may be responsible for a plaintiff's injuries, the cause of action will accrue as to all defendants if a 'reasonable plaintiff with knowledge of the misconduct of one [defendant] would have conducted an investigation as to the other,' and 'that investigation would, as a matter of law, have revealed some evidence of wrongdoing on the part of the other defendant.'"  *Id*. (quoting *Diamond v. Davis*, 680 A.2d 364, 380 (D.C. 1996)).

In *Gardel*, the plaintiff injured himself after leaning on a chain connected to two bollards, one of which was not securely fastened to the ground.  *Id.* at 126.  The loose bollard fell on plaintiff's leg, fracturing his tibia.  *Id.*  The court found that the plaintiff's cause of action accrued at the moment he suffered his injury because even though he did not know the specific identity of the responsible party, "he was on notice that *someone* had failed to secure [the bollard] properly, or at least, that *someone* had failed to maintain it properly."  *Id*. at 127 (emphasis added).  In this case, Dr. Villaruz evaluated Plaintiff on or about January 13, 2011 and January 14, 2011, and Plaintiff was then remitted to PIW.  Plaintiff admitted in his original Complaint that days after he was evaluated by Dr. Villaruz, he contacted an attorney to seek a probable cause hearing associated with his hospitalization.  Therefore, his causes of action against Dr. Villaruz accrued no later than January 14, 2011 or shortly thereafter because Plaintiff—by his own admission—had "some evidence of wrongdoing."  *Cevenini*, 707 A.2d at 771.

Because Plaintiff's claims against Dr. Villaruz are barred by the statute of limitations, the Court should dismiss the claims against Dr. Villaruz.

## II.  Plaintiff's Fourth Amended Complaint Fails to State a Claim for Substantive Due Process Violations and NIED.

In his Fourth Amended Complaint, Plaintiff alleges four claims against Dr. Villaruz: "Denial of Due Process of Law-Substantive Due Process Liberty Interest Against Amelia

Villaruz-Involuntary Commitment 42 USC Sect. 1983" (Count II); "Denial of Due Process of Law-Forcible Medication, 42 USC Sect. 1983-Amelia Villaruz" (Count III); Negligent Infliction of Emotional Distress (Count VI), and Medical Malpractice (Count XIII). With regard to Counts II, III, and VI, Plaintiff has failed to state a claim upon which relief could be granted.

### A.  Substantive Due Process Violations (Counts II and III)

Plaintiff delineates two separate counts concerning alleged due process violations pursuant to § 1983, but both appear to be claims that Dr. Villaruz violated Plaintiff's substantive due process rights under the Fifth Amendment. Substantive due process claims are limited "to actions that in their totality are genuinely drastic." *Tri County Industries, Inc. v. District of Columbia*, 104 F.3d 455, 459 (D.C. Cir. 1997). The allegedly unconstitutional behavior must be "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Abdelfattah v. United States*, 787 F.3d 524, 540 (D.C. Cir. 2015) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998)). The doctrine of substantive due process is intended to prevent "only grave unfairness." *George Washington Univ.*, 318 F.3d at 209. "A plaintiff can show grave unfairness in two ways[:] . . . (i) 'a substantial infringement of state law prompted by personal or group animus,' or (ii) 'a deliberate flouting of the law that trammel[ed] significant personal or property rights.'" *Jones v. District of Columbia*, 322 F.Supp.3d 78, 84 (D.D.C. 2018) (quoting *George Washington Univ.*, 318 F.3d at 209).

In Counts II and III, Plaintiff asserts that Dr. Villaruz violated his substantive due process rights by allegedly (1) failing to conduct an examination of Plaintiff "that would have met a prevailing standard for involuntary commitment[,]" and (2) forcibly medicating Plaintiff "without justification or adherence to any applicable standards[.]" 4th Am. Compl. at ¶¶ 56, 63 [99 at 15, 16]. Plaintiff fails to allege that Dr. Villaruz committed a "substantial infringement of state law" when she evaluated Plaintiff and forced medication. Nor has Plaintiff alleged that Dr.

7

Villaruz's actions were "prompted by personal or group animus." Similarly, Plaintiff has not alleged facts suggesting that Dr. Villaruz "deliberate[ly] flout[ed] the law" and "trammel[ed]" Plaintiff's "personal or property right[s]." Plaintiff's claims that his due process rights were violated by Dr. Villaruz's alleged failure to meet certain "standards" indicates that Plaintiff is merely alleging negligent conduct, and it is well-established that "[n]egligence or 'mere lack of due care' resulting in deprivation of property does not constitute a due process violation." *CHS Indus., LLC v. U.S. Customs & Border Prot.*, 653 F.Supp.2d 50, 56 (D.D.C. 2009) (quoting *Daniels v.* Williams, 474 U.S. 327, 330-31 (1986)).

Because the Fourth Amended Complaint fails to adequately plead a claim for violation of Plaintiff's substantive due process rights against Dr. Villaruz, the Court should dismiss Counts II and III.

### B.  NIED (Count VI)

To establish a claim for NIED, "a plaintiff must show that '(1) the plaintiff was in the zone of physical danger, which was (2) created by the defendant's negligence, (3) the plaintiff feared for his own safety, and (4) the emotional distress so caused was serious and verifiable.'" *Harris v. U.S. Dep't of Veterans Affairs*, 776 F.3d 907, 915 (D.C. Cir. 2015) (quoting *rice v. District of Columbia*, 774 F.Supp.2d 25, 33 (D.D.C. 2011)).

Plaintiff predicates his claim for NIED on Dr. Villaruz's alleged failure to "conduct[] an adequate examination of Plaintiff." 4th Am. Compl. at ¶ 82 [99 at 18]. Plaintiff fails to allege that he suffered physical harm or was in a zone of physical danger as a result of Dr. Villaruz's evaluation. NIED "is a cause of action based on physical harm, and although '[a] plaintiff need not show actual physical impact' to prove that a defendant negligently caused her distress, 'she must show that she actually feared for her [physical] safety as a result of [the defendant's] conduct.'" *Asare v. LM-DC Hotel, LLC*, 62 F.Supp.3d 30, 34 (D.D.C. 2014) (quoting *Hollis v.*

8

*Rosa Mexicano DC, LLC,* 582 F.Supp.2d 22, 27 (D.D.C. 2008)).  Plaintiff has failed to allege

any facts that would suggest that Dr. Villaruz's evaluation of Plaintiff caused him physical harm

or placed him in a zone of physical danger.

Because the Fourth Amended Complaint fails to adequately plead a claim for NIED

against Dr. Villaruz, the Court should dismiss Count VI.

## III.   Dr. Villaruz is Entitled to Qualified Immunity as to Plaintiff's Claims of Substantive Due Process Violations.

Even if Plaintiff's Fourth Amended Complaint stated a claim for violation of Plaintiff's

substantive due process rights, Dr. Villaruz is entitled to qualified immunity on that claim.

"Qualified immunity gives government officials breathing room to make reasonable but mistaken

judgments about open legal questions." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011).  It is

well-settled that an "official who asserts a qualified immunity defense can only be held liable if

the plaintiff suing him establishes that the official violated a constitutional right that was *clearly*

*established at the time*." *Lash v. Lemke*, 786 F.3d 1, 5 (D.C. Cir. 2015) (quoting *Saucier v. Katz*,

533 U.S. 194, 201 (2001)) (internal quotations omitted) (emphasis added).  "And a defendant

cannot be said to have violated a clearly established right unless the right's contours were

sufficiently definite that any reasonable official in the defendant's shoes would have understood

he was violating it." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014) (citing *Ashcroft v. al-*

*Kidd*, 563 U.S. 731, 735 (2011)).  Thus, "existing precedent must have placed the statutory or

constitutional question confronted by the official beyond debate[,]" *al-Kidd,* 563 U.S. at 741,

and the U.S. Supreme Court has admonished against defining clearly established law at a high

level of generality because "doing so avoids the crucial question whether the officer acted

reasonably in the particular circumstances that he or she faced." *Plumhoff*, 134 S. Ct. at 2023.

To be clear, qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2014) (internal citations and quotations omitted).  Thus, the "protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (citation omitted).

"To defeat a defense of qualified immunity, a plaintiff must show not only [1] that an official 'violated a constitutional right,' but [2] also that 'the right was clearly established' at the time of the violation." *Fenwick v. Pudimott*, 778 F.3d 133, 137 (D.C. Cir. 2015) (quoting *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001)).  As detailed in Section II.A *supra*, Plaintiff fails to meet even the first prong of showing that Dr. Villaruz violated a constitutional right.  However, even if Plaintiff had properly alleged a violation of a constitutional right, such a right was not clearly established.

Because Dr. Villaruz is entitled to qualified immunity, the Court should dismiss Counts II and III.

## CONCLUSION

WHEREFORE, for the reasons stated above, Mr. Walker respectfully requests that the Court dismiss Plaintiff's Fourth Amended Complaint as to Mr. Walker.

DATED:  February 26, 2020          Respectfully submitted

KARL A. RACINE
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Michael K. Addo*

10

MICHAEL K. ADDO [1008971]
Chief, Civil Litigation Division Section IV

*/s/ Philip A. Medley*
PHILIP A. MEDLEY [1010307]
Assistant Attorney General
441 Fourth Street, N.W., Suite 630 South
Washington, D.C. 20001
(202) 724-6626
(202) 741-5920 (fax)
philip.medley@dc.gov

*Counsel for Defendants David Walker and Amelia Villaruz*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MELVIN BROWN,

         *Plaintiff,*

   v.

SANDRA HILL, *et al.*,

         *Defendants.*

Case No. 1:14-cv-0140 (TSC)

**ORDER**

Upon consideration of Defendant Amelia Villaruz's Motion to Dismiss Plaintiff's Fourth

Amended Complaint, any opposition, and the entire record herein, it is this _____day of

_____ 2020 hereby,

     **ORDERED** that Defendant Villaruz's Motion is **GRANTED**; and it is further

     **ORDERED** that the Fourth Amended Complaint is **DISMISSED** as to Defendant

Villaruz.

                         _____

                         HON. TANYA S. CHUTKAN
                         United States District Court