# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

)
MELVIN BROWN,                                    )
                                                 )
                        Plaintiff,               )
            v.                                   )            Civil Action No. 14-0140 (TSC)
                                                 )
SANDRA HILL, *et al.*,                           )
                                                 )
                        Defendants.              )
_____ )

## MEMORANDUM OPINION AND ORDER

Defendants David Walker and Amelia Villaruz move to dismiss Plaintiff Melvin Brown's Fourth Amended Complaint. For the reasons discussed below, the court GRANTS their motions.

## I. BACKGROUND

### A. Involuntary Commitment under District of Columbia Law

The District of Columbia Department of Behavioral Health ("DBH"), formerly known as the Department of Mental Health ("DMH"), provides services for District residents, such as Plaintiff, who suffer from mental illness. *See* Fourth Amended Complaint (ECF No. 99, "4th Am. Compl.") ¶¶ 2, 22. DBH "contracts with various core service providers," including the Psychiatric Institute of Washington ("PIW"), Green Door, Inc. ("Green Door"), and So Others Might Eat ("S.O.M.E."). *Id.* ¶ 22. DBH "also operates [the] Comprehensive Psychiatric Emergency Program ('CPEP'), a crisis care facility." *Id.*

District of Columbia law provides:

> An accredited officer or agent of [DBH], or an officer authorized to make arrests in the District of Columbia, or a physician or qualified psychologist of the person in question, who has reason to believe that a person is mentally ill and, because of the illness, is likely to injure himself or others if he is not immediately detained may,

1

> without a warrant, take the person into custody, transport him to a
> public or private hospital, or to [DBH], and make application for his
> admission thereto for purposes of emergency observation and
> diagnosis.   The application shall reveal the circumstances under
> which the person was taken into custody and the reasons therefor.

D.C. Code § 21-521.  The application form is known as an "FD 12."  4th Am. Compl. ¶ 22.  The

person may not be detained for more than 48 hours unless "the administrator of the hospital, the

chief clinical officer of [DBH], or the administrator's or chief clinical officer's designee has,

within that period, filed a written petition with the [Superior Court of the District of Columbia]

for an order authorizing the continued detention of the person for emergency observation and

diagnosis for a period not to exceed 7 days from the time the order is entered."  D.C. Code § 21-

523.

There are two short-term mental health crisis centers in the District of Columbia offering

less restrictive alternatives than hospitalization: Jordan House and Crossing Place.  4th Am.

Compl. ¶ 24.  S.O.M.E. operates Jordan House.  *Id*.  According to Plaintiff, DBH's practice is

either to order hospitalization of persons experiencing mental health crises or to release them into

the community.  *Id.*; *see id.* ¶ 26.  He alleges that "rarely if ever are persons sent from CPEP to

the less restrictive crisis centers in the District of Columbia."  *Id*. ¶ 26.

**B. S.O.M.E. and Green Door**

In 2010, Plaintiff moved into Shalom House, which is owned by S.O.M.E.  *Id*. ¶ 27; *see

id*. ¶ 12.  Apparently dissatisfied with Shalom House's operations, he filed a grievance

complaining that staff "ran the facility like a correctional halfway house."  *Id*. ¶ 27.  Plaintiff

claims that on August 18, 2010, another resident, Sandra Hill, *id*. ¶ 34 "made a complaint of

sexual harassment against Plaintiff," *id*. ¶ 28.  Unhappy with S.O.M.E.'s handling of the sexual

harassment complaint, Plaintiff filed another grievance on August 18, 2020, complaining that

"he was not provided a fair opportunity to defend himself against the allegations[.]"  *Id*. ¶ 28; *see*

*id*. ¶ 34.  He later was "placed on restrictions," and Hill became an employee of S.O.M.E.  *Id*. ¶ 28.  On November 28, 2010, Plaintiff had an altercation with Lawrence Parot, Shalom House's Night Manager, *id*. ¶ 12, who described Plaintiff's behavior as "belligerent," *id*. ¶ 29, and accused Plaintiff of "threatening to sue him," *id*.[1]

Green Door provided mental health services to Plaintiff, *see id.* ¶ 35, who claims that Green Door employees Laura Nichols, Dana Vanzant, and Sinead Quinn cancelled his psychiatrist appointments scheduled for December 7 and 20, 2010, *id*. ¶ 32.  Plaintiff alleges that the appointments were cancelled so that Green Door, "in concert with [S.O.M.E.]," could create the impression that Plaintiff was not cooperating with his treatment plan.  *Id*.

On December 2, 2010, Margaret Simmons, a S.O.M.E. employee, *id*. ¶ 15, contacted DBH's Access Helpline and spoke with David Walker, who allegedly told Simmons to contact Green Door for information about Plaintiff, *id*. ¶¶ 33-34.  Plaintiff claims Simmons was given information about him, including "a complete mental health history, Axis and previous diagnoses by Green Door," as well as his initial diagnosis and medical history.  *Id*. ¶ 34.  This alleged "illegal transfer of protected health information" occurred on December 2, 2010, December 13, 2020, and December 15, 2010, *id*. ¶ 33, when an unidentified Green Door employee spoke with Ann Chauvin, S.O.M.E.'s Chief Medical Officer, *id*. ¶ 9.

On December 22, 2010, Plaintiff filed a grievance with S.O.M.E., *id*. ¶ 34, arising from Simmons' call on December 2, 2010, to "the DMH (Access Helpline) seeking crisis assistance" for him.  Pl.'s Mot. Opposing Green Door's Mot. to Dismiss (ECF No. 28 at 29, Customer's Form for Filing a Grievance) (internal quotation marks omitted).  Plaintiff also complained to

---

[1] The correct spelling of this Defendant's last name appears to be Parot, not Parrot.  *See* Consent Motion to Late File Answer to Fourth Amended Complaint (ECF No. 109) at 1.

DBH about Walker's communication with Simmons, which Randy Raybon acknowledged in his written response dated January 11, 2011.[2]  *See* 4th Am. Compl. ¶ 33.

### C. Plaintiff's Arrest and Involuntary Commitment

In January 2011, Belinda Sealy, S.O.M.E.'s Director of Adult Housing, Susan Bond, CAO of Shalom House, and Chauvin claimed that Plaintiff "left threatening notes, hinting at murder and that 'you shall die,'" *id*. ¶ 30.  And on January 13, 2011, Plaintiff allegedly approached Bond while "'possessing' a razor along with papers."  *Id*. ¶ 31.  This incident later was characterized as Plaintiff having "pulled a razor" on three S.O.M.E. staff members.  *Id*. Plaintiff claims that these January incidents, as well as Parot's accusations, *see id*. ¶ 29, and Bond's report that Plaintiff had not taken his medication for months, *id*. ¶ 31, were used to justify his involuntary commitment.

On January 13, 2011, William Peters and Isha Edwards, members of DBH's Mobile Crisis Unit, accompanied by three unidentified uniformed police officers, arrived at Shalom House.  *Id*. ¶ 35.  The police arrested Plaintiff based on Edwards' representations in an FD 12 that Plaintiff displayed aggression toward S.O.M.E. staff, "was non-compliant with his mental health services, lacked insight into his illness, became 'decompensated,' and was off his medications."  *Id*.  According to Plaintiff, the FD 12 also contained "multiple levels of hearsay" and S.O.M.E. employees' "false allegations" put forth "with the support of" Sarah Hochbaum, a Green Door employee.  *Id*.

Plaintiff claims that Peters and Edwards neither made a "personal observation . . . that Plaintiff was in immediate mental distress" nor made "any effort to ascertain [Plaintiff's] state of

---

[2] *See* ECF No. 38 at 14 (Letter to Plaintiff from Randy Raybon, Clinical Supervisor, Access Helpline/Care Coordination, DMH, dated January 11, 2011).

mind at the time of his arrest." *Id.*  Plaintiff was handcuffed and transported to CPEP, *id.*, where Dr. Amelia Villaruz evaluated him, *id.* ¶ 36.  According to Plaintiff, Villaruz's evaluation did not include a clinical interview, testing, or other evaluative tools.  *Id.* ¶ 37.  She did not report that Plaintiff expressed suicidal or homicidal thoughts.  *Id.*  Although "there was no indication or an immediate apprehension that Plaintiff posed a threat to himself or others," Villaruz offered no reason why placing Plaintiff in a less restrictive setting would not have been appropriate.  *Id.*  Instead, she allegedly justified Plaintiff's involuntary commitment using "boilerplate language that is a standard part of the form for the D.C. Superior Court," *id.* ¶ 36, without indicating that "Plaintiff exhibited symptoms . . . that any serious mental illness presented an imminent risk to [himself] or others," *id.* ¶ 41.

Villaruz's notes in Plaintiff's medical records stated that Plaintiff was belligerent and refused medication.  *Id.* ¶ 38.  She also described him as "lacking insight into his mental illness," and as "delusional and grandiose."  *Id.*  Plaintiff claimed she caused him to be restrained by two men and forcibly injected with two psychotropic drugs.  *See id.* ¶¶ 38, 40.

On January 14, 2011, Dr. Phuong Thu Vo, a psychiatrist at CPEP, prepared an application for Plaintiff's emergency hospitalization at PIW.[3]  *Id.* ¶ 41.  Plaintiff claims that Vo merely "parrot[ed] the language of other reports that described the threatening notes and [Plaintiff's] failure to maintain his treatment plan with Green Door."  *Id.*  On this basis, and without "any personal observation or assessment of Plaintiff," *id.*, Vo concluded that Plaintiff "lacked insight into his illness[,] possessed poor judgment and [presented] a danger to himself or others."  *Id.*

---

[3] Plaintiff variously refers to the doctor as "Phuong Thu Vo," *see* 4th Am. Compl. ¶ 41, "Phuong Vu Tho," *see id.* ¶¶ 134-36, "Pho Vuong Tho", *see id.* ¶ 140, and "Dr. Tho," *see id.* ¶¶ 140-42. The court will refer to her as "Vo."

Plaintiff was transferred to PIW, where upon arrival, he reportedly was agitated, verbally abusive, delusional and suicidal, though he denies ever having any "suicidal ideation." *Id*. ¶ 42. He was not responsive to PIW staff, and again, was restrained by two staff members while injected with drugs. *Id*. Plaintiff later agreed to "cooperate and take the prescribed medication." *Id*. ¶ 43. On January 19, 2011, Plaintiff's attorney informed PIW staff that she intended to request a hearing in Superior Court. *Id*. That same day Plaintiff was released from PIW. *Id*.

On February 1, 2011, S.O.M.E. filed an action in Superior Court to evict Plaintiff from Shalom House. *Id*. ¶ 44. Plaintiff represented the case "was ultimately resolved without Plaintiff's eviction." *Id*.

On July 3, 2014, Plaintiff filed a lawsuit in Superior Court to obtain records regarding his stay at CPEP and PIW. *Id*. ¶ 21. He obtained the records on August 3, 2014, *id.*, at which time he "learned who disclosed his protected health information to Margaret Simmons," *id*. ¶ 45.

## II. DISCUSSION

### A. Plaintiff's Complaint, As Amended

Proceeding *pro se*, Plaintiff filed his original complaint (ECF No. 1, "Complaint") on December 11, 2013, and an amended complaint (ECF No. 13, "First Amended Complaint") on November 21, 2014. Plaintiff then sought leave to file a Second Amended Complaint (ECF Nos. 47, 50) and asked the court to appoint counsel to represent him (ECF No. 48). On March 19, 2018, the court denied without prejudice the motion to amend the complaint and granted the motion to appoint counsel (ECF No. 57). Now represented by counsel, Plaintiff moved for leave to file a Second Amended Complaint (ECF No. 70-2) on September 24, 2018 (ECF No. 70).[4]

---

[4] This proposed pleading should have been designated a proposed Third Amended Complaint, as it followed the original complaint (ECF No. 1), First Amended Complaint (ECF No. 13), and a proposed Second Amended Complaint (ECF No. 47).

Twice more Plaintiff sought leave to amend the complaint (ECF Nos. 81, 95), and over Defendants' objections, the court granted leave to file the operative pleading, Plaintiff's Fourth Amended Complaint (ECF No. 99).

### B. Parties

Plaintiff's 18-count Fourth Amended Complaint purports to bring claims against three groups of individuals and entities: District Defendants, S.O.M.E. Defendants, and Green Door Defendants.

#### 1. District Defendants

The Fourth Amended Complaint mentions the following entities and individuals affiliated with the District of Columbia: the District, Walker, Villaruz, Peters, Edwards, Vo, and DBH.

Count I, brought only against the District, challenges its alleged failure to consider a less restrictive alternative to hospitalization following Plaintiff's detention at CPEP.  *See* 4th Am. Compl. ¶¶ 47-51.  Other counts seek to hold the District liable along with or because of the actions of its employees.  *See id*. ¶¶ 72-77 (Count V, Negligent Infliction of Emotional Distress (District of Columbia and Walker)); *id. ¶¶* 80-83 (Count VI, Negligent Infliction of Emotional Distress (District of Columbia and Villaruz)); *id*. ¶¶ 86-89 (Count VII, False Arrest (District of Columbia, Peters and Edwards)); *id*. ¶¶ 116-18 (Count XIII, Medical Malpractice (Villaruz and District of Columbia)); *id*. ¶¶ 129-31 (Count XV, Medical Malpractice Respondeat Superior (Villaruz)).  Others seek to hold the District liable in conjunction its employees and other defendants.  *See id*. ¶¶ 97-99 (Count IX, Violation of D.C. Code § 7-1201 *et seq.*); *id*. ¶¶ 110-13 (Count XII, Conspiracy under 42 U.S.C. § 1983).  The District is not a named defendant, however, nor is Vo.  Nonetheless, Plaintiff not only brings a claim against Vo, *see id*. ¶¶ 139-42 (Count XVII, Denial of Due Process), but also seeks to hold the District liable for Vo's alleged

medical malpractice, *see id.* ¶¶ 134-36 (Count XVI, Medical Malpractice Respondeat Superior (Vo)).

The court DISMISSES Counts I, XV, XVI, and XVII in their entirety, as they pertain to non-parties District of Columbia and Vo.  In addition, the court DISMISSES Counts V, VI, VII, IX and XIII as against the District of Columbia, and Count XII as against DBH, which cannot be sued.  *See Bynum v. District of Columbia*, No. 16-CV-1904, 2020 WL 491423, at *4 (D.D.C. Jan. 30, 2020) ("find[ing] that DBH is a *non sui juris* entity that cannot be sued in its own name"); *Harris v. Bowser*, 404 F. Supp. 3d 190, 196 (D.D.C. 2019) (dismissing complaint against Metropolitan Police Department, "a sub-agency of the District government [which] cannot be sued in its own name"), *aff'd*, No. 19-5246, 2020 WL 873558 (D.C. Cir. Feb. 14, 2020).

Peters and Edwards are named defendants, *see* 4th Am. Compl. ¶¶ 4-5, and Plaintiff alleges that they caused his arrest without probable cause, *see id.* ¶¶ 66-69 (Count IV, Illegal Seizure and Detention Under the Fourth Amendment and Fifth Amendment (Edwards and Peters)); *id.* ¶¶ 86-88 (Count VII, False Arrest (District of Columbia, Peters and Edwards)). Neither has been served with process, however.  Because Plaintiff in previous filings represented that he does not have or cannot obtain addresses of these defendants for purposes of effecting service of process, the court declines to dismiss Peters and Edwards as party defendants at this time, and Counts IV and VII against them may proceed.

### 2. S.O.M.E. Defendants

In addition to Chauvin, Sealy, Bond, and Simmons, the S.O.M.E. Defendants include S.O.M.E. itself, its President John Adams, Executive Director Richard Gerlach, and staff members Lawrence Parot, Francis Brown-McCall, and Sandra Hill.  *See* 4th Am. Compl. ¶¶ 7-

14.  On review of the Fourth Amended Complaint, the court finds that Plaintiff mentions, but raises no claim against, Parot, Brown-McCall and Hill.  And although S.O.M.E. itself is not a named defendant, Count X is brought against S.O.M.E. alone.  *See id.* ¶¶ 102-03 (Count X, Denial of Substantive Due Process of Law).  Other counts are brought against S.O.M.E., its employees, and other defendants.  *See id.* ¶¶ 92-94 (Count VIII, Intentional Inflection of Emotional Distress); *id.* ¶¶ 110-13 (Count XII, Conspiracy under 42 U.S.C. § 1983); *id.* ¶¶ 121-26 (Count XIV, Denial of Due Process – Violation of Statute – 42 U.S.C. § 1983).

Because S.O.M.E. is not a named defendant, the court DISMISSES Count X in its entirety, and DISMISSES Counts VIII, XII and XIV as against S.O.M.E.  While dismissal of Parot, Brown-McCall and Hill as party defendants may be appropriate, the court declines to do so at this time because counsel has filed an answer on behalf of all the S.O.M.E. Employee Defendants.

### 3. Green Door Defendants

Three counts pertain to Green Door and its employees.  The first is brought against Green Door alone.  *See id.* ¶¶ 106-07 (Count XI, Denial of Substantive Due Process of Law).  The second alleges that Green Door along with Chauvin, Walker, DBH and Nichols conspired to deprive Plaintiff of a constitutionally protected right.  *See id.* ¶¶ 110-13 (Count XII, Conspiracy under 42 U.S.C. 1983).  The third, brought against Green Door, S.O.M.E. and Walker, alleges a substantive due process violation.  *See id.* ¶¶ 121-26 (Count XIV, Denial of Due Process – Violation of Statute).

Plaintiff and the Green Door Defendants have reached a settlement, and all claims against the Green Door Defendants have been dismissed with prejudice.  *See* Praecipe of Dismissal (ECF No. 138).  Accordingly, the court DENIES Defendant Green Door's Rule 12(b)(6) Motion

to Dismiss Plaintiff's Fourth Amended Complaint (ECF No. 100) and DISMISSES WITH

PREJUDICE Green Door, Nichols, Hochbaum, Vanzant, Quinn and Sawina as party defendants.

### C. Dismissal Under Rule 12(b)(6)

Walker and Villaruz move to dismiss under Federal Rule of Civil Procedure 12(b)(6),

arguing that the Fourth Amended Complaint fails to state claims upon which relief can be

granted.  "To survive a 12(b)(6) motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

(2007)).  A claim is plausible when it alleges sufficient facts to permit the court "to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at

678 (citation omitted).  Plaintiff's factual allegations need not be "detailed," but "the Federal

Rules demand more than 'an unadorned, the-defendant-unlawfully-harmed-me accusation.'"

*McNair v. District of Columbia*, 213 F. Supp. 3d 81, 86 (D.D.C. 2016) (citing *Twombly*, 550

U.S. at 570).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for

more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678

(citation omitted).

When considering Defendants' motions to dismiss, the court must construe the complaint

in the light most favorable to Plaintiff and must accept as true all reasonable inferences drawn

from well-pleaded factual allegations.  *See Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir.

1979), *aff'd on reh'g*, 628 F.2d 199 (D.C. Cir. 1980).  Although a plaintiff may survive a Rule

12(b)(6) motion even where "recovery is very remote and unlikely[,]" the facts alleged in the

complaint "must be enough to raise a right to relief above the speculative level[.]"  *Twombly*, 550

U.S. at 555–56 (internal quotation marks and citation omitted).  Moreover, a pleading must offer

more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action[.]" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Evaluating a Rule 12(b)(6) motion is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the facts as alleged, which must be taken as true, fail to establish that a plaintiff has stated a claim upon which relief can be granted, the Rule 12(b)(6) motion must be granted. *See, e.g., Am. Chemistry Council, Inc. v. U.S. Dep't of Health & Human Servs.*, 922 F. Supp. 2d 56, 61 (D.D.C. 2013).

### 1. Walker's Motion to Dismiss

Plaintiff's case against Walker rests on a single allegation: "Walker of [DBH] was contacted by Margaret Simmons of [S.O.M.E.] and was told to contact Green Door for information concerning Plaintiff." 4th Am. Compl. ¶ 33; *see id.* ¶ 34 ("Simmons . . . was directed to Green Door, Plaintiff's provider, to obtain protected health information.").

#### a. Violation of D.C. Code § 7-1201.01 et seq. (Count IX)

Walker moves to dismiss Count IX first because the Fourth Amended Complaint "fails to allege that [he] disclosed to . . . Simmons any protected mental health information." Mem. of P. & A. in Support of Def. David Walker's Mot. to Dismiss Pl.'s 4th Am. Compl. (ECF No. 102, "Walker Mot.") at 8. But while the factual allegation, 4th Am. Compl. ¶ 33, is inartfully drafted, a reasonable inference can be drawn from it.

The District of Columbia Mental Health Information Act ("DCMHIA"), *see* D.C. Code § 7-1201, *et seq.*, defines the term "mental health information" as

> any written, recorded or oral information acquired by a mental health professional in attending a client in a professional capacity which:
>
> > (A) Indicates the identity of a client; and

(B) Relates to the diagnosis or treatment of a client's mental
or emotional condition

D.C. Code § 7-1201(9).  The Fourth Amended Complaint does not allege that Walker himself

disclosed Plaintiff's "initial diagnosis, his living situation and medical history."  4th Am. Compl.

¶ 34.  Rather, it alleges that disclosure occurred later, when Green Door and S.O.M.E. employees

spoke to each other.  *See id*. ("conversations between Green Door and Ann Chauvin of SOME

occurred on December 2, 2010, December 13, 2020 and December 15, 2010 that resulted in . . .

the illegal transfer of protected health information").  Nonetheless, the claim that Simmons was

referred to Green Door could give rise to a reasonable inference that Walker confirmed that

Plaintiff was receiving mental health services, arguably disclosing information relating to his

diagnosis or treatment in violation of DCMHIA.

Walker also argues that the DCMHIA claim, which must be brought within one year, *see*

D.C. Code § 12-309(9), is time-barred, as the DCMHIA claim accrued on December 20, 2010,

the date on which Plaintiff learned of Simmons' call to DBH, yet Plaintiff did not raise his

DCMHIA claim until he filed his First Amended Complaint on November 21, 2014.  Walker

contends that even if Plaintiff's claim accrued on January 11, 2011, when he received Raybon's

letter, the DCMHIA claim still is untimely, having been raised after January 11, 2012.  And even

if the court were to apply a three-year limitations period for a claim under 42 U.S.C. § 1983,

Plaintiff should have raised a DCMHIA claim by December 20, 2013, or alternatively by January

11, 2014, several months before he filed his First Amended Complaint.

In order to avoid the consequences of the one-year limitations period, Plaintiff invokes

Federal Rule of Civil Procedure 15(c), the discovery rule and the doctrine of equitable tolling.

*i. Relation Back of Amendments*

Plaintiff argues that the allegations pertaining to Walker relate back to the original

Complaint filed on December 11, 2013, under Federal Rule of Civil Procedure 15, which in

relevant part provides:

> An amendment to a pleading relates back to the date of the original pleading when . . .
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> > (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
> >
> > (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1).

According to Plaintiff, the Fourth Amended Complaint's factual allegations about Walker

"express the same theory" set forth in the original Complaint.  Pl. Melvin Brown's Opp'n to Def.

David Walker's Mot. to Dismiss Fourth Am. Compl. (ECF No. 104, "Opp. Walker Mot.") at 5.

Further, he claims that Rule 15(c)(1)(C) allows him to name Walker as a defendant in the First

Amended Complaint, after expiration of the one-year statute of limitations, because Plaintiff was

mistaken as to Walker's identity.  Plaintiff asserts that Walker knew or should have known that

an action would have been brought against him, and is not prejudiced by his belated inclusion in

this lawsuit.

Walker counters that Plaintiff cannot rely on a "mistaken identity" theory – Walker was

not a party "misnamed" in the original Complaint whose true identity Plaintiff learned later.

Def. Walker's Reply to Pl.'s Opp'n to Def. Walker's Mot. to Dismiss Pl.'s 4th Am. Compl.

(ECF No. 107, "Walker Reply") at 2.  He argues that Rule 15(c)(1)(C) applies when an amendment *changes* the party or the naming of the party, whereas here, Plaintiff *added* a defendant who was not mentioned in the original Complaint.

The court concludes that the amendments pertaining to Walker do not relate back to the original Complaint.  The only District-affiliated Defendant in the original Complaint is Raybon; neither Walker, DBH nor the District of Columbia is a party to the original Complaint.  It is apparent on review of the original Complaint that Plaintiff knew about Simmons' call to DBH, *see* Compl. at 2, her receipt of protected health information, *see id.*, and Raybon's potential responsibility for the disclosure, *see id.* at 5.  But Plaintiff offers no support for his proposition that a claim against Raybon would have or could have put Walker on notice of this civil action or the likelihood Walker could or would be sued personally.  Nor does Plaintiff claim to have made a mistake regarding Walker's identity.  Under these circumstances, to add Walker as a defendant at this late date prejudices Walker and runs afoul of Rule 15.  *See Stith v. Chadbourne & Parke, LLP*, 160 F. Supp. 2d 1, 7 (D.D.C. 2001); *Grigsby v. Johnson*, No. 95-0213, 1996 U.S. Dist. LEXIS 7034, at *17 (D.D.C. May 13, 1996) (citing *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 470 (2d Cir. 1995)).  Here, "Walker is "[a] potential defendant who has not been named in a lawsuit by the time the statute of limitations has run [and] is entitled to repose."  *Rendall-Speranza v. Nassim*, 107 F.3d 913, 918 (D.C. Cir. 1997).

### ii. Discovery Rule and Equitable Tolling

"Where the fact of an injury can be readily determined, a claim accrues for purposes of the statute of limitations at the time the injury actually occurs."  *Colbert v. Georgetown Univ.*, 641 A.2d 469, 472 (D.C. 1994) (citations omitted).  "[U]nder the discovery rule, a particular cause of action accrues 'when the plaintiff knows or through the exercise of due diligence should

have known of the injury.'" *Ehrenhaft v. Malcolm Price, Inc.*, 483 A.2d 1192, 1201 (D.C. 1984) (quoting *Burns v. Bell*, 409 A.2d 614, 617 (D.C. 1979)).  Equitable tolling "applies most commonly when the plaintiff 'despite all due diligence . . . is unable to obtain vital information bearing on the existence of his claim.'" *Chung v. U.S. Dep't of Justice*, 333 F.3d 273, 278 (D.C. Cir. 2003) (quoting *Currier v. Radio Free Europe*, 159 F.3d 1363, 1367 (D.C. Cir. 1998)).  For example, "where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass," *Norman v. United States*, 467 F.3d 773, 776 (D.C. Cir. 2006) (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)), equitable tolling might apply.

Plaintiff asks the court to consider his *pro se* status at the time he filed his original Complaint and First Amended Complaint.  Further, he asserts that he could not have learned the identity of the person who disclosed his health information to Simmons until July 2014, after having filed a lawsuit in the Superior Court for access to "records pertaining to his stay at [S.O.M.E.] and subsequent confinement at CPEP and [PIW]," 4th Am. Compl. ¶ 21.  He argues, therefore, that the DCMHIA claim in the First Amended Complaint fell within the one-year limitations period.  But Plaintiff need not have known the name of the actual culprit in order to know that he had a potential claim.  *See Gardel v. A Structural Eng'rs PLLC*, 286 F. Supp. 3d 120, 126 (D.D.C. 2017).

Plaintiff is no more successful with his equitable tolling argument.  He points to Raybon's letter as the cause of his delayed filing.  The letter, which Plaintiff characterizes as a "misleading response," does not indicate that a disclosure of protected mental health information had occurred, but Plaintiff faults Raybon for having "created an inherent latency in the possible claim that could not have been clarified until later."  Opp. Walker Mot. at 7-8.  The court

construes this argument as an attempt to demonstrate misconduct on Defendants' part to support application of equitable tolling.

Based on the allegations in the Fourth Amended Complaint, Plaintiff knew or should have known of a DCMHIA violation by one of four possible dates: (1) December 20, 2011, the date he learned Simmons' had called DBH; (2) December 22, 2010, the date he filed a grievance regarding Simmons' call to DBH; (3) January 11, 2011, when he received correspondence from Randy Raybon confirming the call; or (4) January 13, 2011, the date he was arrested.  Under any of these scenarios, Plaintiff's DCMHIA claim is untimely.  Therefore, the Court GRANTS Walker's motion to dismiss Count IX.

### b. Negligent Infliction of Emotional Distress (Count V)

Plaintiff's negligent infliction of emotional distress ("NIED") claim arises from Walker's alleged disclosure of protected mental health information in violation of the Health Insurance Portability and Accountability Act ("HIPAA"), *see* 42 U.S.C. § 1320d-6.[5]  *See* 4th Am. Compl. ¶¶ 72-74.  Plaintiff alleges that a foreseeable consequence of Walker's disclosure was the information would be used "for the improper purpose of supporting Plaintiff's wrongful detention," thereby causing him emotional distress and humiliation.  *Id*. ¶ 76-77.  Walker moves to dismiss because the complaint fails to state a viable NIED claim.

An NIED claim may proceed under two theories, the more common of which contemplates a "zone of danger," under which a plaintiff may "recover for mental distress if the defendant's actions caused the plaintiff to be in danger of physical injury and if, as a result, the plaintiff feared for his own safety."  *Robinson v. Howard Univ., Inc.*, 335 F. Supp. 3d 13, 31

---

[5]  The court presumes that, where Plaintiff cited "42 U.S.C. 1320(d)," 4th Am. Compl. ¶ 72, he intended to cite 42 U.S.C. § 1320d-6.

(D.D.C. 2018) (citations and internal quotation marks omitted), *aff'd sub nom. Robinson v. Wutoh*, 788 F. App'x 738 (D.C. Cir. 2019).  Walker argues that Plaintiff's factual allegations "cannot possibly make out a claim for NIED because he has failed to allege that he suffered physical harm or was in a zone of physical danger as a result of [Walker's] conversation with . . . Simmons."  Walker Mot. at 7.  In addition, Walker notes that the factual allegations suggest purposeful action on his part.  If Walker's communications with Simmons were knowing or intentional, Plaintiff cannot make out a negligence claim.  His act either is intentional or negligent; it cannot be both.  *See Harris v U.S. Dep't of Veterans Affairs*, 776 F.3d 907, 916 (D.C. Cir. 2015) (quoting *District of Columbia v. Chinn*, 839 A.2d 701, 706 (D.C. 2003)); *Rice v. District of Columbia*, 774 F. Supp. 2d 25, 33–34 (D.D.C. 2011).

Plaintiff responds that he "was placed in a zone of danger as a result of . . . Walker's per se negligence proximately caused [him] harm."  Opp. Walker Mot. at 8.  Here Plaintiff deviates further still from an NIED claim by introducing language suggesting a completely different claim, negligence per se, arising from Defendants' violation of a statute.  *See Ceco Corp. v. Coleman*, 441 A.2d 940, 945 (D.C. 1982) (citation omitted) ("[W]here a particular statutory or regulatory standard is enacted to protect persons in the plaintiff's position or to prevent the type of accident that occurred, and the plaintiff can establish his relationship to the statute, unexplained violation of that standard renders the defendant negligent as a matter of law.").

A complaint must give fair notice to each defendant of the claim being asserted to allow him to prepare a proper response and an adequate defense.  *See Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977).  As drafted, Count V leaves Walker and the court to guess which negligence claim Plaintiff intends to bring.  Accordingly, the court GRANTS Walker's motion to dismiss Count V.

*c. Conspiracy Under 42 U.S.C. § 1983 (Count XII)*

In conclusory language, Plaintiff alleges that Chauvin, Green Door, Walker, DBH and Nichols "agreed to violate Plaintiff's rights by illegally disclosing his protected health information [and] falsely cancel[ling] medical appointment[s] for the purpose of involuntarily committing him in violation of the United States Constitution."  4th Am. Compl. ¶ 110.

"A complaint must set forth facts making the existence of a conspiracy plausible; conclusory statements are not enough."  *Kenley v. District of Columbia*, 83 F. Supp. 3d 20, 30 (D.D.C. 2015).  To bring a claim for conspiracy under § 1983, Plaintiff "must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."  *Id*. (citations omitted).

Even if Walker had disclosed to Simmons the existence or identity of Plaintiff's service provider, Plaintiff's factual allegations fall far short of implicating Walker in a conspiracy.  The only alleged "meeting of the minds" involved Chauvin and an unidentified employee of Green Door.  4th Am. Compl. ¶ 33.  Plaintiff neither alleges that Walker personally shared details of his mental health history, nor connects Walker's actions to those of Chauvin, Nichols and Green Door, nor alleges that Walker disclosed mental health information for the purpose of effecting Plaintiff's involuntary commitment.  The Fourth Amended Complaint simply fails to carry Plaintiff's allegation of Walker's agreement beyond the speculative and into the realm of the plausible.  *See Twombly*, 550 U.S. at 555.  The court therefore GRANTS Walker's motion to dismiss Count XII.

*d. Due Process Violations (Counts XIV and XVIII)*

The Fourth Amended Complaint raises two due process claims against Walker.  In Count

XIV, Plaintiff alleges that Walker, S.O.M.E., and Green Door violated his constitutional right to

due process by disclosing protected health information "in violation of the 'Privacy Rule' as

enacted under 42 U.S.C. [§ 1320d-6] and under color of law," 4th Am. Compl. ¶ 123, which

Defendants then "used for the improper purpose of supporting Plaintiff's wrongful detention," *id*.

¶ 125.  The statute provides:

> A person who knowingly and in violation of this part—
>> (1) uses or causes to be used a unique health identifier;
>> (2) obtains individually identifiable health information relating
> to an individual; or
>> (3) *discloses individually identifiable health information to
> another person*, shall be punished as provided in [42 U.S.C. § 1320d-6(b)].
> For purposes of the previous sentence, a person (including an employee or
> other individual) shall be considered to have obtained or disclosed
> individually identifiable health information in violation of this part if the
> information is maintained by a covered entity (as defined in the HIPAA
> privacy regulation described in section 1320d–9(b)(3) of this title) and the
> individual obtained or disclosed such information without authorization.

42 U.S.C. § 1320d-6 (emphasis added).  Count XVIII, brought only against Walker, alleges that

he deprived Plaintiff of his right to substantive due process by disclosing protected mental health

information which "resulted in initiating an action to have Plaintiff involuntarily committed and

hospitalized."  4th Am. Compl. ¶ 146.  This conduct allegedly "was egregious that shocked the

conscious [sic] and resulted in a denial of due process of law."  *Id*.

Walker treats Counts XIV and XVIII as duplicative and argues that they fail to state a

substantive due process claim.  Plaintiff maintains that Counts XIV and XVIII are distinct

claims; the former "alleges that the wanton, egregious and flagrant disclosure of protected health

information was a violation of clear legal prohibitions that resulted in a denial of [Plaintiff's]

right to due process of law."  Opp. Walker Mot. at 11.  The latter, Plaintiff explains, deems the

disclosure itself a constitutional violation cognizable under 42 U.S.C. § 1983.  *See id.*  Distinct counts or not, Plaintiff attempts to stretch the alleged facts to fit a constitutional claim where none exists, and the Fourth Amended Complaint fails to state a substantive due process claim against Walker.

A substantive due process claim contemplates "actions that in their totality are genuinely drastic," *Tri County Industries, Inc. v. District of Columbia*, 104 F.3d 455, 459 (D.C. Cir. 1997), with conduct "so egregious, so outrageous, that it . . . shock[s] the contemporary conscience," *Abdelfattah v. United States*, 787 F.3d 524, 540 (D.C. Cir. 2015) (citation omitted).  It is intended to guard against "grave unfairness," *George Washington Univ. v. District of Columbia*, 318 F.3d 203, 209 (D.C. Cir. 2003), such as "a substantial infringement of state law prompted by personal or group animus, or a deliberate flouting of the law that trammels significant personal or property rights," *Silverman v. Barry*, 845 F.2d 1072, 1080 (D.C. Cir. 1988) (citations omitted).

Plaintiff claims Walker revealed either the fact that Plaintiff had a mental health services provider, or the entity that provided mental health services to Plaintiff, or both.  This apparent lapse does not rise to the level of a constitutional claim.  *See Silverman*, 845 F.2d at 1080 ("Inadvertent errors, honest mistakes, agency confusion, even negligence in the performance of official duties, do not warrant redress under [§ 1983].") (citing *Ortega Cabrera v. Municipality of Bayamon*, 562 F.2d 91, 103 (1st Cir. 1977)).  The facts alleged do not show that Walker held a personal animus towards Plaintiff or toward a group of which Plaintiff is a member.  Nor do they plausibly support a claim that Walker's disclosure trammeled a significant personal right.  Furthermore, Plaintiff offers no controlling legal authority to support his assertion of a cognizable "constitutional right to the privacy and confidentiality of medical records and communications."  Opp. Walker Mot. at 12.

Even if Walker's disclosure violated HIPAA, and even if the disclosure of protected

mental health information played some part in Plaintiff's involuntary commitment, Plaintiff

cannot repackage a HIPAA claim as a substantive due process claim.  HIPAA does not create a

private right of action.  *See Acara v. Banks*, 470 F.3d 569, 571 (5th Cir. 2006) (citing 42 U.S.C.

§§ 1320d-1 to d-7); *Hudes v. Aetna Life Ins. Co.*, 806 F. Supp. 2d 180, 196 (D.D.C. 2011), *aff'd*,

493 F. App'x 107 (D.C. Cir. 2012).  Rather, an individual's "only redress for an alleged HIPPA

violation is to lodge a written complaint with the Secretary of Health and Human Services,

through the Office for Civil Rights, which has the discretion to investigate the complaint and

impose sanctions, both civil and criminal."  *Johnson v. Kuehne & Nagel Inc.*, No. 11-cv-02317,

2012 WL 1022939, at *5 (W.D. Tenn. Mar. 26, 2012) (citing 45 C.F.R. § 160.306); *Hudes*, 806

F. Supp. 2d at 196 (noting that it is "the Secretary's prerogative to impose penalties for violations

of HIPAA").  HIPAA is not enforceable through § 1983.  *See Sneed v. Pan Am. Hosp.*, 370 F.

App'x 47, 50 (11th Cir. 2010) (rejecting "argument that, because HIPAA codifies the

constitutional right to privacy, there exists an implied private cause of action under HIPAA");

*Adams v. Eureka Fire Prot. Dist.*, 352 F. App'x 137, 139 (8th Cir. 2009) ("Since HIPAA does

not create a private right, it cannot be privately enforced either via § 1983 or through an implied

right of action."); *Kittel v. City of Oxnard*, No. 17-CV-6709, 2019 WL 1578369, at *3 (C.D. Cal.

Feb. 5, 2019) (viewing "as persuasive other courts' determinations that HIPAA cannot be

enforced through Section 1983"); *Eckles v. Kingston*, No. 3:17-CV-05492, 2017 U.S. Dist.

LEXIS 183770, at *1 (W.D. Wash. Nov. 2, 2017) (rejecting § 1983 claim arising from prisoner's

allegation that medical files from emergency room visit were provided to Department of

Corrections); *Doe v. Kaweah Delta Hosp.*, No. 1:08-cv-0118, 2016 WL 4381870, at *3 (E.D.

Cal. Aug. 16, 2016) (concluding that plaintiff whose HIV status was revealed to third parties by

employee of public hospital "may not sue under Section 1983 for a HIPAA violation"), *aff'd*, 698 F. App'x 457 (9th Cir. 2017). Therefore, the court GRANTS Walker's motion to dismiss Counts XIV and XVIII.

### 2. Villaruz's Motion to Dismiss

Villaruz moves to dismiss on the ground that Plaintiff's claims against her are barred by the three-year statutes of limitations applicable to NIED, medical negligence, and constitutional claims. *See generally* Def. Amelia Villaruz's Mot. to Dismiss Pl.'s Fourth Am. Compl. (ECF No. 123, "Villaruz Mot.") at 3-6. Because her alleged wrongdoing occurred on January 13, 2011 and January 14, 2011, while Plaintiff was at CPEP, *see* 4th Am. Compl. ¶¶ 36-38, 41, Villaruz asserts that the limitations period ended on or about January 14, 2014. Because Plaintiff did not name Villaruz as a defendant until he filed his First Amended Complaint on November 21, 2014, Villaruz argues that Counts II, III, VI and XIII are time-barred because the limitations period had expired several months earlier.

Plaintiff responds that his claims against Villaruz are timely filed under one of three alternative theories. He asks the court to consider his *pro se* status when this litigation began and argues—unpersuasively—that the discovery rule or equitable tolling should apply. *See generally* Pl. Melvin Brown's Opp'n to Def. Amelia Villaruz's Mot. to Dismiss Compl. (ECF No. 133, "Opp. Villaruz Mot.") at 5-7.

Next, Plaintiff argues that, under Rule 15(c)(1)(B), the amendments pertaining to Villaruz relate back to the original Complaint filed on December 11, 2013. According to Plaintiff, "[a]ll facts and occurrences arose from the same common facts" set forth in the original Complaint. *See* Opp. Villaruz Mot. at 5; *see id.* at 3. Specifically, Plaintiff refers to the following paragraph:

> [O]n January 13, 2011 the Police came and took me in handcuffs to CPEP (Comprehensive Psychiatric Emergency Program) @ D.C.

> General for two days and on to PIW . . . for two more days (until I
> called an attorney . . . asking her to take me in front of a Judge to
> determine my competenece [sic] (Probable Cause hearing.)   The
> psych doctor refused to go to open court and discharged me (during
> the same hour,) having been deprived of his liberty, saying nothing
> of the embarrassment and humiliation)

Compl. at 4.  Plaintiff argues that his detention at CPEP already had been placed at issue in this

lawsuit, and his First Amended Complaint merely "detailed all that occurred while at CPEP,"

Opp. Villaruz Mot. at 3, including Villaruz's involvement.

Lastly, under Rule 15(c)(1)(C), Plaintiff argues that he may add Villaruz as a defendant

because both the original Complaint and First Amended Complaint would have put her on notice

of this civil action and Plaintiff's claims against her specifically.  *See* Opp. Villaruz Mot. at 4.

Based on the same language of the original Complaint quoted above, Plaintiff asserts that

Villaruz and the District were "on notice of a claim that the [DBH] failed to follow a standard of

care in his hospitalization and . . . occurrences during this hospitalization." *Id*. at 3.  Thus, he

contends, "the specific allegations identifying Amelia Villaruz as a defendant and the theories

against her relate back to the original filing of the complaint."  *Id*. at 5.  The court disagrees.

Only a strained reading supports Plaintiff's position that the proposed Fourth Amended

Complaint asserts a claim against Villaruz that was apparent in the original Complaint.  The

original Complaint challenged Plaintiff's placement at CPEP, his involuntary hospitalization, and

the means by which Defendants allegedly effected his detention.  Nothing in the paragraph cited

above reasonably can be construed as raising or attempting to raise a claim about a standard of

care or the events which occurred during Plaintiff's stay at CPEP and PIW.

Even if claims pertaining to Villaruz arose from the same set of facts alleged in the

original Complaint for purposes of Rule 15(c)(1)(B), Plaintiff does not show that the

amendments meet the criteria set forth in Rule 15(c)(1)(C).  The Fourth Amended Complaint

does not change a party or the naming of a party; it adds Villaruz as an entirely new party.  The portion of the Complaint quoted above, and upon which Plaintiff relies, does not mention Villaruz, or forced medication, or medical malpractice, or any incident occurring during Plaintiff's placement in CPEP.  Neither the District nor DBH is a named defendant in any complaint, and the original Complaint's passing references to DBH, *see* Complaint at 2, the grievance to which Raybon responded, *see id*. at 3, and to CPEP, *see id*. at 4, would not have put Villaruz on notice of Plaintiff's claims against her.  It is not clear that the "psych doctor [who] refused to go to open court," *id*. at 4, was Villaruz, or that Villaruz, a District of Columbia employee, would have discharged Plaintiff from PIW.  And a fair reading of the original Complaint suggests that Plaintiff's real concern was with the alleged unauthorized disclosure of protected mental health information preceding and culminating in his arrest, after which he was detained and hospitalized.  Villaruz is not alleged to have been involved in these events.  In other words, the original Complaint would not have put Villaruz on such notice of this action that she would not be prejudiced in defending herself on the merits of Plaintiff's claims.

Lastly, no allegation or argument supports a conclusion that Villaruz "knew or should have known that the action would have been brought against [her], but for a mistake concerning [her] identity. Fed. R. Civ. P. (c)(1)(C)(ii).  Plaintiff does not argue that he made a mistake regarding Villaruz's identity, and even if he had, the fact that he did not know this defendant's identity does not qualify as a mistake.  *See Henao v. Smiths Detection, Inc*., No. 1:18-CV-2564, 2019 WL 2476631, at *4 (D.D.C. June 13, 2019).

"A potential defendant who has not been named in a lawsuit by the time the statute of limitations has run is entitled to repose."  *Rendall-Speranza*, 107 F.3d at 918.  The court

concludes that the amendments pertaining to Villaruz do not relate back and, therefore, GRANTS Villaruz's motion to dismiss Counts II, III, VI, and XIII.

**D. Other Matters**

1. Answer on Behalf of the S.O.M.E. Employee Defendants

By minute order on September 9, 2019, the court granted Defendants Adams, Gerlach, Chauvin, Sealey, Bond, Parot, Hill's Consent Motion to Late File an Answer to Plaintiff's Fourth Amended Complaint (ECF No. 109). At that time the court did not grant leave to file the answer itself, and will do so below.

2. Clerk's Entry of Default Against the District of Columbia

Because the District of Columbia is not a named defendant, the court will grant the District's Motion to Set Aside Default (ECF No. 129), vacate the Clerk's Entry of Default (ECF No. 127) and vacate the September 9, 2019 minute order insofar as it, in error, directed the Clerk of Court to issue summonses and to cause service to be effected upon the District of Columbia.

3. Plaintiff's Rule 12(g) Motion

Given Plaintiff's contributions to the slow progress of this litigation, the court denies his requests to dismiss Defendants' motions under Federal Rule of Civil Procedure 12(g)(2).

4. Plaintiff's Opposition to Villaruz's Motion to Dismiss

Plaintiff filed a consent motion (ECF No. 130) for an extension of time to file his opposition to Villaruz's motion to dismiss. Plaintiff filed his opposition (ECF No. 133) on March 25, 2020, and the court will grant the motion nunc pro tunc.

Remaining for resolution are: (1) Counts IV (Illegal Seizure and Detention under Fourth and Fifth Amendments) and VII (False Arrest) as against Peters and Edwards; (2) Count VIII (IIED) as against the S.O.M.E. Employee Defendants; (3) Count XII as against Chauvin.

It is hereby

ORDERED that Defendant Adams, Gerlach, Chauvin, Sealey, Bond, Parot, and Hill's Consent Motion to Late File an Answer to Plaintiff's Fourth Amended Complaint [109] is GRANTED, and the Clerk of Court shall docket the S.O.M.E. Employee Defendants' Answer in a separate docket entry.  It is further

ORDERED that Court X against non-party S.O.M.E is DISMISSED in its entirety.  It is further

ORDERED that Counts VIII, XII and XIV are DISMISSED as against S.O.M.E.  It is further

ORDERED that Counts I, XV, XVI and XVII are DISMISSED in their entirety as they pertain to non-parties District of Columbia and Phuong Thu Vo.  It is further

ORDERED that Counts V, VI, VII, and XIII are DISMISSED as against the District of Columbia.  It is further

ORDERED that Count IX is DISMISSED in its entirety.  It is further

ORDERED that Count XII is DISMISSED as against the Department of Behavioral Health.  It is further

ORDERED that that Defendant Green Door's Rule 12(b)(6) Motion to Dismiss Plaintiff's Fourth Amended Complaint [100] is DENIED, and pursuant to the parties' settlement agreement and Praecipe of Dismissal [138], defendants Green Door, Timothy Sawina,  Sarah Hochbaum, Laura Nichols, and Dana Vanzant are DISMISSED WITH PREJUDICE as party defendants.  It is further

ORDERED that Defendant David Walker's Motion to Dismiss Plaintiff's Fourth Amended Complaint [102] is GRANTED.  It is further

ORDERED that Defendant Amelia Villaruz's Motion to Dismiss Plaintiff's Fourth Amended Complaint [128] is GRANTED.  It is further

ORDERED that the District of Columbia's Motion to Set Aside Default [129] is GRANTED, the Clerk's Entry of Default [127] is VACATED, and the court's September 9, 2019 minute order is VACATED IN PART insofar as it, in error, directed the Clerk of Court to issue summonses and to cause service to be effected upon the District of Columbia.  It is further

ORDERED that Plaintiff Melvin Brown's Consent Motion to Enlarge the Time in which to File Plaintiff's Opposition to Defendant Amelia Villaruz's Motion to Dismiss the Fourth Amended Complaint [130] is GRANTED nunc pro tunc.


DATE: October 15, 2020                                    /s/
                                                         TANYA S. CHUTKAN
                                                         United States District Judge