IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MELVIN BROWN, | ) |
|     Plaintiff, | ) ) ) ) |
| v. | )   Case No: 14-00140 (TSC) |
| SANDRA HILL, et al., | ) ) ) ) |
|     Defendants. | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF MELVIN BROWN'S MOTION TO RECONSIDER ORDER
DISMISSING DEFENDANTS AMELIA VILLARUZ, DAVID WALKER, SO OTHERS
MIGHT EAT ("SOME") AND THE DISTRICT OF COLUMBIA**

On October 15, 2020, this Court entered its Memorandum and Order ("Memorandum") dismissing numerous counts against defendants Amelia Villaruz, David Walker, SOME and the District of Columbia. The Court's order, however, misapprehended or did not consider facts and arguments that are a part of the record and/or the Fourth Amended Complaint. This results in clear error by the Court thus compelling its reconsideration of its order.

a) According to precedence on reading *pro se* pleadings subsequent pleadings to an original complaint must be read as part of, or supplemental to, the original complaint. All three pleadings in this early stage were filed *pro se*. Mr. Brown first filed his complaint within the limitations period on December 11, 2013. Dkt. Entry 1, attached hereto as Exh. A. In his first amendment to this complaint Mr. Brown identified Amelia Villaruz as the official and physician responsible for his continued involuntary commitment at CPEP and, more importantly, his forced medication while at that facility. *See* Amended Compl., Dkt. Entry# 13 at p. 7, attached hereto as Exh. B. These allegations were further elaborated on with more specific details in his Second

1

Amended Complaint Second Amended Compl. Dkt. Entry #47 at pp.17-22, attached hereto as Exh. C. In its Memorandum dismissing Villaruz from the complaint, however, this Court did not address these specific allegations contained in the early pleadings as well the text of Mr. Brown's opposition to Dr. Villaruz's Motion to Dismiss the Complaint in which he articulated the standard that required that all pleadings must be considered.

The Memorandum only addresses a limited portion of the pleadings and was contrary to how *pro* se pleadings must be viewed. Under Fed. R. Civ. P. 15(c) and the liberal reading afforded *pro se* pleadings, the Court was required to look at all pleadings in concert. This would treat the Amended Complaint and Second Amended Complaint as supplemental to the original filing thus adopting the initial filing date. Not treating the Amended Complaint as supplemental to the first filing is clear error. It was further error not to consider the Second Amended Complaint as a further continuation of the first two.

b) Next, the Court's dismissal of both the District of Columbia and SOME is also clear error that does not recognize the record. Under *Fed R. Civ. P.* 8(a), a complaint must contain " a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." *Fed. R. Civ .P.* 8(a)(2). For a complaint to be sufficient it must"… give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell A. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citation omitted). Nothing more is required.

On numerous occasions within the specific factual allegations the Fourth Amended Complaint recites specific facts directed against and identifying both the District of Columbia and SOME as entities and defendants within the cause of action. Both were given more than sufficient notice of the claims raised against them. Indeed, both parties were served with process. And in prior rulings, this Court granted its leave to have the parties served with process. Given

these circumstances, it is inconsistent to conclude that somehow the District of Columbia and SOME were not identified as defendants in this case. This conclusion reached by the Court was clear error.

    c) This Court should reconsider its order granting Defendant David Walker's motion to dismiss the Complaint. In its Memorandum, the Court failed to address whether the "Privacy Rule" contained in HIPAA created an independent right to privacy that would be cognizable under 42 U.S.C. 1983. *See Health Information Portability and Accountability Act*, 42 U.S.C. 1320d-6, 45 CFR 160 & 164 ("HIPAA"). The Court limited its ruling to denying any implied private right of action under HIPAA. The theories and analysis are separate and distinct. And any fair reading of HIPAA and its attendant regulatory regime would result in finding that a protected right cognizable under 42 U.S.C. 1983 was created by this statute.

    d) And last, the court committed "clear error" by dismissing Count V of the Fourth Amended Complaint. In this Count Plaintiff Melvin Brown alleged that defendant David Walker along with employees of Green Door and SOME violated statutes that were enacted for the purpose of protecting the rights of a class of persons that included Melvin Brown. Because Mr. Brown is member of the protected class, it can be easily inferred that he was placed in the zone of danger by the *per se* negligence of the defendants. The factual allegations more than meet the notice pleading standard of *Fed. R. Civ. P.* 8(a).

## ARGUMENT

### Standard to be Applied

Under Federal Rule of Civil Procedure Rule 54(b), "any order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and

liabilities." *Fed. R. Civ. P*. 54(b). *Dunlap v. Presidential Advisory Comm'n on Election Integrity*, Civil Action No. 17cv2361 (CKK), 2018 WL 3150217, at *4 (D.D.C. June 27, 2018) (citation omitted). A *Fed. R. Civ. P*. 54(b) motion should be granted "as justice requires." *Coulibaly v. Tillerson*, 278 F.Supp.3d 294, 301 (D.D.C. 2017) (Contreras, J.); *United States v. Dynamic Visions, Inc.*, 321 F.Supp.3d 14, 17 (D.D.C. 2017) (Kollar-Kotelly, J.); *Singh v. George Washington Univ.*, 383 F.Supp.2d 99, 101 (D.D.C. 2005) (Lamberth, J.) (quoting *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004) (Lamberth, J.)). The proponent carries the burden of proving "that some harm, legal or at least tangible, would flow from a denial of reconsideration, " and accordingly persuading the Court that in order to vindicate justice it must reconsider its decision." *Dynamic Visions, Inc.*, 321 F.R.D. at 17 (quoting *Cobell*, 355 F.Supp.2d at 540) (internal quotation marks omitted). "In general, a court will grant a motion for reconsideration of an interlocutory order only when the movant demonstrates: '(1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error in the first order." *Zeigler v. Potter*, 555 F.Supp.2d 126, 129 (D.D.C. 2008) (quoting *Keystone Tobacco Co., Inc. v. U.S. Tobacco Co.*, 217 F.R.D. 235, 237 (D.D.C. 2003)), *aff'd* No. 09-5349, 2010 WL 1632965 (D.C. Cir. Apr. 1, 2010).

As contrasted with *Fed. R. Civ. P*. 59(e), "clear error" within Fed. R. Civ. P. 54(b) allows for the revision of interlocutory orders at any time before entry of a judgment that adjudicates all claims before the court. While 59(e) sets a high threshold for reconsideration, reconsideration under *Fed R. Civ. P. 54* (b) is a "more flexible" standard that allows revisions to an order "as justice requires." *Schvartser v. Lesker,* 18-473 (JDB)(D.D.C. 2019) *citing Scahill v. District of Columbia*, 286 F.Supp.3d 12, 17 (D.D.C. 2017) (discussing the differences between Rule 59(e) and Rule54(b)). )). "Justice may require reconsideration 'where a court has "patently

misunderstood a party[, ] . . . has made an error not of reasoning but of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the Court."'" *Id.* at 17-18 (alterations in original) (citations omitted); *see Singh v. George Wash. U.*, 383 F.Supp.2d 99, 101 (D.D.C. 2005)("Errors of apprehension may include a Court's failure to consider 'controlling decisions . . . that might reasonably be expected to alter the conclusion reached by the court.'" (citation omitted)).

A) <u>The Court should reconsider its order granting Amelia Villaruz's Motion to Dismiss and deny this motion.</u>

Applying this standard to the dismissal of defendant Amelia Villaruz, this Court must revisit its order and deny Dr. Villaruz's motion. Contrary to the Court's reading of the record, in his Amended Complaint Plaintiff Melvin Brown detailed Dr. Villaruz's conduct that included an inadequate examination that resulted in his involuntary commitment and the ordering of forced and involuntary medication. The Court misapprehended Mr. Brown's argument that these allegations must be included as a supplement to his original pleading because of his *pro se* status. This is especially the case when considered with the seriousness of the allegations and alleged harms. Because of the equities at play, the relaxed pleading standards for *pro se* plaintiffs and the rules articulated under Fed. R. Civ. P. 15(c), this Court must allow the claims against Amelia Villaruz to move forward.

In its Memorandum the Court took a truncated view of the record that failed to recognize all that was alleged by Mr. Brown in the early stages of this litigation. Perhaps misapprehending the argument, the order simply recites limited facts that on their face should have been enough to have put the District and Dr. Villaruz on notice of potential litigation. The Court stated:

> Only a strained reading supports Plaintiff's position that the proposed Fourth Amended Complaint asserts a claim against Villaruz that was apparent in the original Complaint. The original Complaint challenged Plaintiff's placement at CPEP, his involuntary

5

>hospitalization, and the means by which Defendants allegedly effected his detention. Nothing in the paragraph cited above reasonably can be construed as raising or attempting to raise a claim about a standard of care or the events which occurred during Plaintiff's stay at CPEP and PIW.

Memorandum at p. 23. This does not mention or account for the principles of equitable tolling within the context of Fed. R. Civ. P. 15(c) articulated by Mr. Brown in his opposition and those additional facts that detail theories of liability alleged against Dr. Villaruz in the Amended Complaint and his later Second Amended Complaint.

As argued in the context of *pro se* pleadings, Mr. Brown relied on clear case law that holds' that both the complaint and subsequent amended complaints must be considered as one pleading filed within the tolling period. Mr. Brown, in opposing Dr. Villaruz's Motion to Dismiss the Fourth Amended Complaint, argued:

>Overarching this analysis are the less stringent pleading standards applied to *pro se* litigants. *See Ford v. Donovan,* 891 F.Supp.2d 60, 62 (D.D.C. 2012) (While an amended complaint generally supersedes the original, the court, mindful of Plaintiff's *pro se* status, will instead consider his pleadings collectively). In circumstances such as those now before the Court when dealing with *pro se* pleadings a subsequent pleading is considered as supplementing its predecessor pleading. *Ford, Id. citing Kim v. United States,* 840 F.Supp.2d 180, 185 (D.D.C. 2012) (citing, *inter alia, Richardson v. United States,* 193 F.3d 545, 548 (D.C. Cir. 1999)) (noting that "where a *pro se* party has filed multiple submissions, the district court must generally consider those filings together and as a whole"), *aff'd,* 707 F.3d 335 (D.C. Cir. 2013)("Instead of superseding his original Complaint, as a typical Amended Complaint does, this later pleading supplements it. Given his *pro se* status, the Court will treat the combined pleadings as one joint Complaint.").

Opp. to Mot. to Mot. to Dismiss Villaruz, Dkt. Entry# 133 at pp. 5-7.

If read as a continuation of the first complaint (Original Complaint, Dkt. Entry 1, Exh. A) as argued by Mr. Brown in his opposition, the combined pleadings allege far more than what was relied on by the Court in dismissing the Fourth Amended Complaint. First, page 7 of Mr. Brown's *pro se* Amended Complaint alleges Villaruz as a defendant and defines her culpability for his involuntary commitment and, more importantly, her ordering his forced medication

6

without a court order or other legal basis. *See* Dkt. Entry 3 at p. 7, Exh. B. This was enough to bring Dr. Villaruz in the lawsuit under *Fed R. Civ. P.* 15 (c). Later, pages 17 to 22 of Mr. Brown's Second Amended Complaint, again filed *pro se*, are devoted to Dr. Villaruz's improper conduct and violations of a standard of care and egregious constitutional violations. Dkt. Entry # 47 at pp. 17-22, Exh. C. After identifying Amelia Villaruz a second time as the responsible party, Mr. Brown complained that she only "rehashed" the statements in the FD 12 without conducting an independent examination. *Id* at 17-18. In this same statement, Mr. Brown articulated a standard of care as it related to his involuntary commitment. *Id.* Mr. Brown states that involuntary commitment was ordered despite the lack of any symptoms of "manic, bi-polar or schizo disorder." *Id* at 18. In this same allegation Mr. Brown states that Dr. Villaruz ordered two male assistants to restrain him while he was injected with Geodon and Ativan without any court order. *Id* at p. 18. Further on, Mr. Brown complained that any report or opinion that he was a danger to himself or others was based on rehashed information of which Dr. Villaruz made no effort to verify any statements or reports. *Id* at p. 20.[1]

---

[1] These same allegations found in the amended complaint are furthered in the Fourth Amended Complaint. In the Fourth Amended Complaint Mr. Brown alleges that Dr. Villaruz continued her notes to his medical record by describing him as continuing to be belligerent and refusing medication. She further wrote that Mr. Brown lacked insight into his mental illness, was delusional and grandiose. *See* Pl.'s Fourth Amended Compl. at para. 38. There was no indication, however, of homicidal or suicidal ideation or behavior that posed a threat to himself or others. *Id.* Because of his refusal of medication and the other described behavior, Dr. Villaruz decided to force medication on Plaintiff. *Id.* Plaintiff further alleges that "…In a nursing assessment that followed his entry into CPEP, Plaintiff was again described as *cooperative* (emphasis added) though with pressured speech, angry mood, labile, or changing, affect, with disorganized thought and delusional. Pl.'s Fourth Amended Compl. at para. 39. Again, the nursing notes indicate the absence of any suicidal or homicidal ideation or behavior that posed a threat to himself or others. *Id.* As described by Mr. Brown in his complaint, he alleges that "[he] was forcibly medicated at CPEP with Geodon and Ativan, two psychotropic drugs. Plaintiff alleges that he was standing at the nurses' station speaking with staff when two men came behind him, restrained him, and injected Plaintiff with the medications. These medications made Plaintiff feel drowsy and on the verge of going to sleep. He could not talk or think and felt like a zombie." Pl.'s Fourth Amended

If considered together, the allegations in Mr. Brown's Complaint, Amended Complaint, and Second Amended Complaint, all filed *pro se*, raise violations of a standard of care and important serious constitutional violations. They identified Dr. Villaruz as the party responsible for both his continued detention and the illegal, forced medication. Indeed, the *pro se* Complaint and *pro se* Amended Complaint suffice to provide adequate notice of the lawsuit and legal liability within *Fed. R. Civ. P.* 15 (c). The Second Amended Complaint, also filed *pro se*, further supplements the original pleadings. All must be considered together, precluding dismissal of Villaruz from the Fourth Amended Complaint.

The harm from the dismissal of Villaruz is obvious. The order would release defendant Villaruz from any accountability for what any reasonable person would consider egregious violations of constitutional rights and norms. The gravity and clarity of the allegations are persuasive and militate for equitable tolling within *Fed R. Civ. P.* 15(c). It was egregious for Dr. Villaruz to commit Mr. Brown over his objections without first completing a full examination. It was even more egregious to restrain and forcibly medicate Mr. Brown without legal process and justification. Both are serious constitutional violations that would escape redress should the Court not revisit its order. The equities of harm weigh heavily in favor of Plaintiff Melvin Brown. The Court should therefore vacate its order dismissing Amelia Villaruz and order her to answer the complaint.

> B) <u>The Defendants District of Columbia and So Others Might Eat ("SOME") were specifically identified in the Fourth Amended Complaint as to each allegation and theory raised against them and served with process. Thus, any idea that they were not identified in the complaint or given adequate notice of the complaint is baseless. The record more than meets the notice pleading standards applied in federal courts.</u>

---

Compl. at para 40. Plaintiff's objective conduct while at CPEP does not meet the *Harper* criteria for involuntary medication and certainly does not meet a clear and convincing evidence standard, proving an imminent danger to himself or others.

Contrary to the Court' ruling that would require a formulaic pleading format that would list each defendant, "[n]otice pleading" is all that is required for initiating a lawsuit against a party. Under this forgiving standard, the only requirement is that the "allegations give [the defendant] fair notice of what petitioner's claims are and the grounds upon which they rest." *Fed. R. Civ. P.* 8(a). *Id.* at 514; *see also Hill v. Bd. of Trs. of the Univ. of the D.C,* 146 F.Supp.3d 178, 184-85 (D.D.C. 2015) (observing with respect to discrimination claims that the requirement that a plaintiff allege facts giving rise to a plausible entitlement to relief is not a heavy burden and "the factual detail required to survive a motion to dismiss can be quite limited") (citing cases). Indeed, recent opinions have done little to alter the fundamental principles behind notice pleading. For instance, the D.C. Circuit has interpreted *Bell Atlantic Corp. Twombly,* 550 U.S. 544 (2007) as "leav[ing] the long-standing fundamentals of notice pleading intact."  *Tooley v. Napolitano,* 556 F.3d 836 (D.C. Cir. 2009)  *citing Aktieselskabet Af 21 v. Fame Jeans*, [525 F.3d 8](#), 15 & n.3 (D.C. Cir. 2008). Thus, under Rule 8 of the Federal Rules of Civil Procedure, "a sufficient complaint 'contain[s] a short and plain statement of the claim showing that the pleader is entitled to relief,' enough to give a defendant 'fair notice of the claims against him.'" Id. (*quoting Ciralsky v. CIA* 355 F.3d 661at 668-70 (D.C. Cir. 2004)) (alteration in original). "'[S]pecific facts are not necessary,' and a complaint need only give the defendant fair notice of the claims." *Aktieselskabet*, 525 F.3d at 16 (*quoting Erickson v. Pardus*,551 U.S. 89 (2007)) (alteration in original).  *Aktieselskabet AF 21*., 525 F.3d at 15 (D.C. Cir. 2008).

The text of the Fourth Amended Complaint details facts and theories against both the District of Columbia ("District") and SOME. The allegations identify them as defendants in the litigation while articulating the specific facts raised against both. In Count I of the Fourth Amended Complaint, Mr. Brown identifies the District in claim consistent with *Monell v. Dep't.*

9

*of Social Services for City of New York,* 436 U.S. 658 (1978), a theory that implicates the District. The District is identified as the defendant in the caption of the count and the text of the allegations. *See* Fourth Amended Complaint, Dkt Entry #99 at p. 13 and para 51 at p. 14. Further on the District is identified as a defendant on theories of common law *respondeat superior* for the wrongdoing of its agents. In Count VI of the complaint Mr. Brown identifies the District as the master of Amelia Villaruz in a theory of the negligent infliction of emotional distress. *See* Fourth Amended Compl., Dkt. Entry #99 at p. 18. And later in Count XV of the complaint the District is again identified on a theory of vicarious liability for the malpractice of the Dr. Villaruz. Fourth Amended Compl., Dkt. Entry #99 at pp. 24-25. All told, the District was given more than enough notice of the allegations raised against them and that it was a defendant in the litigation.

Likewise, SOME, as a corporate entity, was identified in the Fourth Amended Complaint as a defendant. In Count X of the Fourth Amended Complaint SOME is identified as a defendant along with its individual employees. The complaint states:

> …While acting under color law, Defendant SOME and its employees Ann Chauvin, Belinda Sealy and Susan Bond deprived Plaintiff of his right to due process of law by making false statements concerning his conduct, blocking his access to his mental health providers and other acts that resulted in initiating an action to have Plaintiff involuntarily committed and hospitalized. The defendants conduct was egregious that shocked the conscious and resulted in a denial of due process of law…

*See* Fourth Amended Complaint at Dkt. Entry# 99 at p. 21. And later in Count XII of the complaint Mr. Brown alleged that SOME, by and through its agent, conspired to violate Mr. Brown' civil rights by alleging:

> …That Defendants Ann Chauvin, SOME, Laura Nichols, Green Door were contractors of the District Columbia acting to further the government's interest and were therefore acting under color law…illegally disclosing his protected health information, falsely canceled medical appointment for the purpose of involuntarily committing him in violation of the United States Constitution…

Fourth Amended Complaint at Dkt. Entry #99 at pp.22-23. In earlier passages in the complaint both the District of Columbia through its agency the Department of Mental health and SOME were identified as defendants in this case.

Moreover, both the District and SOME were served with process and identified as defendants to the Court who then granted leave to issue summonses and effect service of process. The record indicates that leave was granted to issue a summons and serve the District of Columbia on September 9, 2019 and the summons as to the District of Columbia was issued on October 24, 2019. *See* Dkt. Entry # 118. Return service affidavits were filed with the Court as to the District of Columbia Attorney General on December15, 2019, and the Mayor of the District of Columbia on December 19, 2019. *See* Dkt. Entry ##'s 121 and 122.

Robert Gerlach and John Adams, two operating officers, were served on April 13, 2015. Dkt. Entry# 17. These defendants responded on May 11, 2015. Dkt. Entry # 22. The text of the complaint indicates that these officers were served in their official capacities thereby binding SOME as a defendant entity to the litigation.

- C) <u>In granting David Walker's motion to dismiss the complaint, the court misapprehended and did not address whether the "Privacy Rule" under HIPAA creates substantive rights that are then cognizable under 42 U.S.C. 1983. This theory is distinct from and does not rely on whether a private right of action is created by the statute. The sole determination is whether a substantial right is created by the statute. By the text of the statute as well as the regulations promulgated by the administering agency, such a right to privacy was created by HIPAA.</u>

In its order granting defendant David Walker's motion to dismiss the complaint, this Court held that 42 USC 1322(d) did not contain a private right of action for violations of its "Privacy Rule" and that any inadvertent violation by defendant Walker did not violate substantive due process. The Court, however, did not or determine whether the statute created rights that can be vindicated under 42 U.S.C.1983. The distinction is clear: a separate

11

determination of whether the Privacy Rule creates an independent right is required. A finding that a private right of action is not created by statute does not end the discussion of whether a statute creates rights. In this case a right to privacy that is cognizable under 42 U.S.C. 1983 is created.

In his Motion for Leave to File the Fourth Amended Complaint, Mr. Brown articulated the distinctive theories between an implied private right of action under *Health Information Portability and Accountability Act*, 42 U.S.C. 1320d-6, 45 CFR 160 & 164 ("HIPAA") and one predicated on rights contained within HIPAA itself filed under 42 U.S.C. 1983. *See* Pl.'s Mem. For Mot. For Leave to File Fourth Amended Compl. at pp. 10-14. In this section, Mr. Brown clarified the distinction by stating:

> "[T]he *Gonzaga* Court clarified the relationship between § 1983 enforceable "rights" analysis and implied right of action analysis. [556 U.S. 273, 283 (2002)]. The Court explained that "whether a statutory violation may be enforced through § 1983 is a different inquiry than that involved in determining whether a private right of action can be implied from a particular statute." *Id.* Namely, plaintiffs proceeding under § 1983 "do not have the burden of showing an intent to create a private remedy because § 1983 generally supplies a remedy for the vindication of rights secured by federal statutes." *Id.* at 284." *Duberry v. D.C.* 14 cv1258 (D.D.C. 2015).

*Id* at p. 11 fn.2.

To this end, Mr. Brown further argued that what has come to be known as the "Privacy Rule" contained within the *Health Information Portability and Accountability Act*, 42 U.S.C. 1320d-6, 45 CFR 160 & 164 and its regulatory regime provides an independent right to privacy that can be brought under 42 U.S.C. 1983. Mr. Brown explained in great detail that HIPAA meets the standards articulated in *Blessing v. Freestone,* 520 U.S. 329 (1997), in which the Supreme Court delineated three factors controlling a court's determination of whether a federal statute creates a "right" enforceable under 42 U.S.C. 1983. "First, Congress must have intended that the provision in question benefit the plaintiff." *Id.* "Second, the plaintiff must demonstrate

that the right asserted[ ] protected by the statute is not so vague and amorphous' that its enforcement would strain judicial competence." *Id.* at 340-41 (citation omitted). "Third, the statute must unambiguously impose a binding obligation on the States, " using "mandatory, rather than precatory, terms." *Id.* at 341. This analysis was later refined in *Gonzaga v. Doe,* 536 U.S. 273 (2002) in which the Court held that the statute at issue must be "unmistakabl[y] focus[ed] on the benefitted class." *Id.* at 284. "Statutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of persons." *Alexander v. Sandoval, 532 U.S. 273,* 289 (2001). HIPAA creates such a substantive and enforceable right to privacy of protected health information.[2]

  Despite Mr. Brown's admonition that the issue of an implied private right of action and the *Blessing* analysis provided above cannot be conflated, this Court did not address or even mention the independent basis for liability under 42 U.S.C. 1983. *See* Pl.'s Reply to David Walker's Mot to Dismiss Fourth Amended Compl., Dkt. Entry# 107 at p. 13 and Memorandum Order at p. 21. Instead, the Court limited its order dismissing the complaint as to defendant David Walker by determining that no implied private right of action can be found within the Privacy Rule of HIPAA. This limited ruling fails to address an important and distinctive argument as to whether a right is created that is cognizable under a separate mechanism. The Court thereby misapprehended an important issue in the case that requires resolution. This Court must therefore reconsider its order dismissing the complaint as to David Walker, resolve all issues raised in the case and deny defendant David Walker's motion to dismiss the complaint.

---

[2] Mr. Brown provides a full and detailed analysis and argument in his Motion for Leave to File Fourth Amended Complaint. Mot. For Leave to Amend Fourth Amended Complaint, Dkt. Entry# at pp. 10-14. Mr. Brown hereby adopts and reasserts this analysis and argument herein.

13

Again, the harm from the Court's error is clear. Without absolving defendant Walker for his role in what was a clear violation of the law, the Court's ruling nonetheless rejects any accountability for his illegal actions. As part of his case, Mr. Brown further alleged that any possible harm from the illegal disclosures was foreseeable. In short, dismissing defendant David Walker from the complaint fails to recognize his role in what, as alleged by Mr. Brown, was a substantial violation of his protected rights. The Court must revisit this issue, vacate its order and allow Counts XII and XIV of the Fourth Amended Complaint to proceed.

> D) <u>Count V of the complaint explicitly states elements meeting a theory of per se negligence. It would be clear error to dismiss this count based on the reasons given in its Memorandum Order.</u>

By dismissing Mr. Brown' account that alleges the negligent infliction of emotional distress because of a lack of notice does not account for what was alleged in the complaint and the clarity of notice provided. The Court's Memorandum Order states:

> A complaint must give fair notice to each defendant of the claim being asserted to allow him to prepare a proper response and an adequate defense. See Brown v. Califano, 75 F.R.D. 497, 498 (D.D.C. 1977). As drafted, Count V leaves Walker and the court to guess which negligence claim Plaintiff intends to bring. Accordingly, the court GRANTS Walker's motion to dismiss Count V

Memorandum Order at p. 17.

Count V of the complaint alleges:

COUNT V
(Negligent Infliction of Emotional Distress Against the District of Columbia and David Walker)

71. Plaintiff hereby incorporates paragraphs 1 through 70 by reference herein.

72. Under 42 U.S.C. 1320 (d), Plaintiffs personal health information is protected from unauthorized disclosure by health care providers, here DMH and Green Door, LLC.

73. That DMH and Green Door possessed Plaintiff's protected health information in the form of mental health records and identifying mental health providers.

74. DMH and Green Door, through its employees Laura Nichols, Sarah Hochbaum and Dana Vanzant did act with Defendant David Walker to disclose this protected health information.

75. The purpose of the HIPAA statute is to promote public safety and to protect persons in Plaintiff's position and to prevent the type harm caused here.

76. Because of these disclosures it was foreseeable that the information was to be used for the improper purpose of supporting Plaintiff's wrongful detention

77. Plaintiff suffered emotional distress and humiliation as a direct and proximate result of Defendants' negligence.

78. Plaintiff therefore seeks $1 million in compensatory and punitive damages and any other relief the Court deems appropriate.

Fourth Amended Complaint at Dkt. Entry # 99 at p. 17.

Referring again to the notice pleading standard of *Fed. R. Civ. P.* 8(a), all that is required is that the complaint allege facts sufficient to put a defendant on notice of the complained of cause of action. As argued above, under this forgiving standard the only requirement is that the "allegations give [the defendant] fair notice of what petitioner's claims are and the grounds upon which they rest." *Fed. R. Civ. P.* 8(a). *Id.* at 514; *see also Hill v. Bd. of Trs. of the Univ. of the D.C,* 146 F.Supp.3d 178, 184-85 (D.D.C. 2015) (observing with respect to discrimination claims that the requirement that a plaintiff allege facts giving rise to a plausible entitlement to relief is not a heavy burden and "the factual detail required to survive a motion to dismiss can be quite limited") (citing cases). This standard does not require precision as to each element or specific language that labels a theory a liability. A plaintiff only needs to allege facts that "plausibly" make out a specific claim. Based on the factual allegations raised here defendant David Walker's

conduct violated a statute that was enacted to protect a class of people of which Melvin Brown is a member. It can easily be inferred that because of his class within the statute he was well within a zone of danger created by David Walker's conduct. The words "zone of danger" are not `needed. Mr. Brown pled more than enough the defeat a motion under *Fed R. Civ. P.* 12(b)(6). The order dismissing this Count was "clear error."

## CONCLUSION

For the reasons stated herein, any opposition, the reply, the law, the facts and the record herein, this Court must grant Plaintiff Melvin Brown's Motion to Reconsider the Court's Order Dismissing Amelia Villaruz, David Walker, the District of Columbia and So Other Might Eat, vacate its order, and order these defendants to answer Plaintiff Melvin Brown's Fourth Amended Complaint.

Respectfully submitted,

　　　/s/
GEORGE E. RICKMAN
DC Bar 433298
P.O. Box 21267
Kalorama Station
Washington, D.C.  20009-21267
202-258-3643
georgerick11@comcast.net
*Counsel for Plaintiff*