# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MELVIN BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 14-0140 (TSC) |
| | ) | |
| SANDRA HILL, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

This matter is before the Court on Defendants Adams, Chauvin, Sealey, Bond, Parot, and

Hill's Motion for Judgment on the Pleadings (ECF No. 143) and Plaintiff Melvin Brown's

Second Motion to Reconsider Dismissal of Defendants Chauvin, Sealey and Bond (ECF No.

150). For the reasons discussed below, the court GRANTS Defendants' motion and DENIES

Plaintiff's motion.

## I. BACKGROUND

So Others Might Eat ("S.O.M.E.") and Green Door, Inc., both community-based non-

profit organizations, provided services under contract with the District of Columbia Department

of Behavioral Health ("DBH") to District residents suffering from mental illness. *See* Fourth

Amended Complaint (ECF No. 99, "4th Am. Compl.") ¶¶ 19, 22, 25. At all relevant times,

Plaintiff was a resident of Shalom House, a facility operated by S.O.M.E., and received mental

health services from Green Door.[1]

---

[1] Plaintiff reached a settlement with the Green Door and its employees, *see* Praecipe of
Dismissal (ECF No. 138), and the court dismissed Green Door, Inc., Laura Nichols, Sarah
Hochbaum, Dana Vanzant, and Timothy J. Sawina with prejudice as parties.

Plaintiff alleges that Defendants obtained and disclosed protected mental health information without his consent for the purpose of effecting his arrest, removal from Shalom House, and involuntary commitment. The alleged disclosures occurred when Margaret Simmons, whom Defendants identify as a Shalom House resident, *see* Mem. in Support of Defs. Adams, Gerlach, Chauvin, Sealey, Bond, Parot, and Hill's Mot. for J. on the Pleadings (ECF No. 143, "Defs. Mot.") at 5, contacted DBH's Access Helpline and spoke with DBH employee David Walker, at which time Simmons "was told to contact Green Door for information concerning Plaintiff. 4th Am. Compl. ¶¶ 33-34. Additional disclosures of protected mental health information allegedly occurred on December 2, 2010, December 13, 2010, and December 15, 2010, during conversations between Ann Chauvin, S.O.M.E.'s Chief Medical Officer, and unidentified Green Door staff. *See id.* Information obtained from S.O.M.E. staff was incorporated into an "FD-12," the application setting forth the circumstances under which a mentally ill person is taken into custody involuntarily. *See id.* ¶¶ 22, 35.[2]

---

[2]  District of Columbia law provides:

> An accredited officer or agent of [DBH], or an officer authorized to make arrests in the District of Columbia, or a physician or qualified psychologist of the person in question, who has reason to believe that a person is mentally ill and, because of the illness, is likely to injure himself or others if he is not immediately detained may, without a warrant, take the person into custody, transport him to a public or private hospital, or to [DBH], and make application for his admission thereto for purposes of emergency observation and diagnosis. The application shall reveal the circumstances under which the person was taken into custody and the reasons therefor.

D.C. Code § 21-521. The person may not be detained for more than 48 hours unless "the administrator of the hospital, the chief clinical officer of [DBH], or the administrator's or chief clinical officer's designee has, within that period, filed a written petition with the [Superior Court of the District of Columbia] for an order authorizing the continued detention of the person for emergency observation and diagnosis for a period not to exceed 7 days from the time the order is entered." D.C. Code § 21-523.

On January 13, 2011, three uniformed Metropolitan Police Department officers and two members of DBH's Mobile Crisis Unit arrested Plaintiff at Shalom House and transferred him to DBH's Comprehensive Psychiatric Emergency Program ("CPEP"), a crisis care facility. *See id.* ¶¶ 22, 35. On January 14, 2011, Plaintiff was transferred to the Psychiatric Institute of Washington ("PIW") and was discharged on January 19, 2011. *See generally id.* ¶¶ 33-43.

S.O.M.E. initiated eviction proceedings in D.C. Superior Court on February 1, 2011, and the matter was resolved without Plaintiff's eviction. *Id* ¶ 44.

## II. DISCUSSION

Remaining for resolution are Count VIII (intentional infliction of emotional distress) against Ann Chauvin, Belinda Sealy, Susan Bond, John Adams, and Richard Gerlach, and Count XII (conspiracy under 42 U.S.C. § 1983) against Chauvin. Plaintiff also seeks to revive Count X (substantive due process) as against Chauvin, Sealy and Bond.

### A. Defendants' Motion for Judgment on the Pleadings

#### 1. Legal Standard

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The motion is "functionally equivalent to a Rule 12(b)(6) motion." *Rollins v. Wackenhut Sen's., Inc.*, 703 F.3d 122, 130 (D.C. Cir. 2012); *see Jung v. Ass'n of Am. Med. Colleges*, 339 F. Supp. 2d 26, 35-36 (D.D.C. 2004) ("[T]he standard of review for motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is essentially the same as that for motions to dismiss under Rule 12(b)(6)."). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007));

*see Rollins*, 703 F.3d at 130 (concluding that that *Iqbal* and *Twombly* apply to Rule 12(c)

motions).  In other words, a plaintiff must "plead[] factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Patton Boggs*

*LLP v. Chevron Corp.*, 683 F.3d 397, 403 (D.C. Cir. 2012) (alteration in original) (quoting *Iqbal*,

556 U.S. at 678)).

"The moving party must demonstrate its entitlement to judgment in its favor, even

though the court evaluating the 12(c) motion will accept as true the allegations in the opponent's

pleadings, and as false all controverted assertions of the movant." *Dist. No. 1, Pac. Coast Dist.,*

*Marine Eng'rs Beneficial Ass'n, AFL-CIO v. Liberty Mar. Corp.*, 933 F.3d 751, 760-61 (D.C.

Cir. 2019) (quoting *Haynesworth v. Miller*, 820 F.2d 1245, 1249 n.11 (D.C. Cir. 1987)

(collecting cases), *abrogated on other grounds by Hartman v. Moore*, 547 U.S. 250 (2006))

(additional citation and internal quotation marks omitted).  The court may not "rely on facts

outside of the pleadings, must construe the complaint in a light most favorable to the plaintiff,

and must accept as true all reasonable factual inferences drawn from well-pleaded factual

allegations." *Brown v. District of Columbia*, 249 F. Supp. 3d 439, 442 (D.D.C. 2017) (quoting

*Maniaci v. Georgetown Univ.*, 510 F. Supp. 2d 50, 59 (D.D.C. 2007)) (internal quotation marks

omitted).

### 2. Lawrence Parot, Francis Brown-McCall, Sandra Hill

The court previously observed, and Defendants now argue, *see* Defs. Mot. at 8, that the

Fourth Amended Complaint fails to state claims against Lawrence Parot, Francis Brown-McCall

and Sandra Hill.  Plaintiff does not contest this argument, and the court GRANTS judgment on

the pleadings for Parot, Brown-McCall and Hill.

### 3. Count VIII: Intentional Infliction of Emotional Distress

In Count VIII, Plaintiff alleges that Defendants "falsified and embellished facts and complaints about Plaintiff to aid them in removing Plaintiff from Shalom House." 4th Am. Compl. ¶ 93. The result of this alleged "egregious" conduct "was the intentional infliction of emotional distress." *Id.* ¶ 94.

### a. Plaintiff Timely Filed the IIED Claim

The parties concur that Plaintiff's IIED claim arose on January 13, 2011, the date of his arrest, removal from Shalom House, and transfer to CPEP. *See* Defs. Mot. at 9; Pl. Melvin Brown's Opp. To Defs. Adams, Gerlach, Chauvin, Sealey, Bond, Parot and Hill's Mot. for J. on the Pleadings (ECF No. 146, "Pl. Oppn.") at 9. Defendants represent that Plaintiff did not name them party Defendants until he filed his First Amended Complaint (ECF No. 13) on November 21, 2014. *See* Defs. Mot. at 9; Defs. Adams, Gerlach, Chauvin, Sealey, Bond, Parot, and Hill's Reply to Pl. Opp. To Mot. for J. on the Pleadings (ECF no. 151, "Reply") at 3. Applying a three-year statute of limitations, Defendants argue that Plaintiff's IIED claim is time-barred because the limitations period would have ended on or about January 13, 2014, several months before the First Amended Complaint was filed. Defs. Mot. at 8-9. Plaintiff responds, without argument or citation to controlling authority, that the IIED claim is timely filed because the allegations of the "Amended Complaint either relate back to or supplement the original [C]omplaint[.]" Pl. Oppn. at 9.

Defendants are mistaken in representing that none of them were named a Defendant until the First Amended Complaint. Plaintiff's original Complaint (ECF No. 1, "Compl.") identifies Sandra Hill, Susan Bond, Belinda Sealey, Lawrence Parot, Ann Chauvin, Richard Gerlach and Margaret Simmons in its caption, *see* Compl. at 1, and most of the Complaint pertains to the

5

release of protected mental health information without Plaintiff's consent. While Plaintiff's transfer to CPEP and eviction from Shalom House are mentioned only briefly, *see id.* at 4, Defendants' alleged efforts to have Plaintiff removed from Shalom House figure prominently, *see id.* at 4-5. That said, Defendants would not necessarily have been on notice of the IIED claim when the original Complaint was filed: summonses were not issued and served because the court dismissed the original Complaint *sua sponte* on January 30, 2014.

It appears that the IIED claim would be timely under Federal Rule of Civil Procedure 15, which provides that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading[.]" Fed. R. Civ. P. (c)(1)(B). But whether or not the Fourth Amended Complaint is timely, the court finds that it fails to state an IIED claim upon which relief can be granted.

### b. Plaintiff Fails to State an IIED Claim

"In order to establish a prima facie case of intentional infliction of emotional distress, a plaintiff must show (1) extreme and outrageous conduct on the part of the defendants, which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress." *Williams v. District of Columbia*, 9 A.3d 484, 493–94 (D.C. 2010) (quoting *Futrell v. Dep't of Labor Fed. Credit Union*, 816 A.2d 793, 808 (D.C. 2003) (internal quotation marks omitted)). An IIED claim survives a motion to dismiss if a plaintiff alleges "conduct that was 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* (quoting *Bernstein v. Fernandez*, 649 A.2d 1064, 1075 (D.C. 1991)); *Kerrigan v. Britches of Georgetowne*, 705 A.2d 624, 628 (D.C. 1997).

*i.* Intentional or Reckless; Extreme and Outrageous

Defendants argue that Plaintiff's failure to allege that they acted intentionally or

recklessly means that the Fourth Amended Complaint "fails to establish a prima facie case for

IIED against the [them.]" Defs. Mem. at 10. And "[t]o the extent that the IIED claim is

premised upon [their] 'falsely obtain[ing] protected health information,'" Defendants posit that

such "conduct was contemplated by law." *Id.* at 11. They point to the District of Columbia

Mental Health Information Act ("DCMHIA"), *see* D.C. Code § 7-1201.01 *et seq.*, pursuant to

which the agents or employees of a mental health care provider may share a client's mental

health information not only with another provider to facilitate the delivery of services to that

client, *see* Defs. Mem. at 10-11, but also with an "officer authorized to make arrests in the

District of Columbia," D.C. Code § 7-1203.03(a)(9), "on an emergency basis . . . if the mental

health professional reasonably believes that such disclosure is necessary to initiate or seek

emergency hospitalization of the client . . . or to otherwise protect the client or another

individual from a substantial risk of imminent and serious physical injury," D.C. Code § 7-

1203.03(a). Defendants argue that disclosure of protected mental health information is

permissible under the DCMHIA, *see* Defs. Mem. at 11, particularly where Plaintiff's "arrest was

predicated on his risk of harming himself or others," 4th Am. Compl. ¶ 35; *see* Reply at 5.

Plaintiff counters that the Fourth Amended Complaint alleges sufficient facts, pointing to

paragraph 93,, which "summarizes specific allegations that describe [Defendants'] conduct." Pl.

Oppn. at 10. That conduct would include Sandra Hill's sexual harassment complaint against

Plaintiff, Plaintiff's altercation with Lawrence Parot on December 22, 2010, and reports of

Plaintiff's threatening behavior towards S.O.M.E. staff and noncompliance with his treatment

plan. *See id.* at 10-11; 4th Am. Compl. ¶¶ 28-32. Plaintiff argues that these factual allegations

"support a theory that [Defendants] engaged in egregious conduct that resulted in the intentional infliction of emotional distress," Pl. Oppn. at 11.

Plaintiff's opposition neither mentions the DCMHIA nor addresses Defendants' argument that the DCMHIA permits the disclosure of mental health information.  Rather, he asserts that the only permissible disclosures are those set forth in D.C. Code § 7-242(a)(1), to include determination of the "amount and type of . . . [t]reatment [and] [s]ervices" a client requires, D.C. Code § 7-242(a)(1)(B), (C).  He claims Defendants had an unlawful "malevolent purpose" for disclosure unrelated to Plaintiff's treatment, namely removal from Shalom House. Pl. Oppn. at 11.

To determine whether conduct is extreme or outrageous, the court "must consider . . . the specific context in which the conduct took place, for in determining whether conduct is extreme or outrageous, it should not be considered in a sterile setting, detached from the surroundings in which it occurred.'" *King v. Kidd*, 640 A.2d 656, 668 (D.C. 1993) (citations, internal quotation marks and brackets omitted).  "The 'context' consists of the nature of the activity at issue, the relationship between the parties, and the particular environment in which the conduct took place." *Id.*  "[T]he court . . . determine[s], in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Ross v. DynCorp*, 362 F. Supp. 2d 344, 358–59 (D.D.C. 2005) (citations and internal quotation marks omitted).

A defendant's "intent or recklessness . . . 'is normally a factual question for the jury[.]'" *Ross*, 362 F. Supp. 2d at 360 (quoting *Waldon v. Covington*, 415 A.2d 1070, 1078 (D.C. 1980)), and "[i]t is possible to infer the existence of . . . intent or recklessness . . . from the very outrageousness of a defendant's conduct," *Kotsch v. District of Columbia*, 924 A.2d 1040, 1046

(D.C. 2007); *Waldon*, 415 A.2d at 1077.  But here, too, "a court must [initially] determine whether the plaintiff[s'] allegations, viewed in the light most favorable to the plaintiff, are minimally sufficient to show the existence of such intent."  *Ross*, 362 F Supp. 2d at 360 (quoting *Waldon*, 415 A.2d at 1078) (brackets in original).

"[A]cts giving rise to liability for intentional infliction must be both beyond all the bounds of decency and without just cause or excuse."  *Waldon*, 415 A.2d at 1076 (quoting *Clark*, 105 F.2d at 65) (internal quotation marks omitted).  Here, the alleged disclosures occurred among the providers of mental health services and housing to their client, *see* 4th Am. Compl. ¶¶ 30, 33-34, after Plaintiff allegedly displayed aggression to S.O.M.E. staff, "lacked insight into his illness," had not taken prescribed medications, and "was non-compliant with mental health services," *id.* ¶ 35.  Plaintiff has alleged, and it reasonably can be inferred, that Defendants' disclosure of his protected mental health information was intentional.  However, the facts alleged do not support his assertion that that the disclosure amounts to extreme, outrageous or reckless conduct.

## *ii.* Causation

Defendants argue that their alleged actions were not the proximate cause of Plaintiff's removal from Shalom House: Metropolitan Police Department officers effected Plaintiff's arrest, and Plaintiff's involuntary commitment came about on the order of a psychiatrist employed by the District of Columbia.  *See* Defs. Mem. at 9.  These intervening causes, they argue, broke "the chain of proximate causation between [S.O.M.E.'s] conduct and [Plaintiff's] harm."  *Id.* at 10.

Plaintiff responds that he "only needs to prove 'actual cause' as opposed to . . . proximate cause."  Pl. Oppn. at 9.  He disputes Defendants' analysis, arguing that "[s]uperseding or intervening causes are . . . limited to theories of negligence," not to an intentional tort such as

IIED. *Id.* at 9-10. Case law suggests otherwise, supporting the proposition that Defendants' "actions must proximately cause [Plaintiff] emotional distress . . . .'" *Kotsch v. District of Columbia*, 924 A.2d 1040, 1046 (D.C. 2007) (quoting *Clark v. Associated Retail Credit Men of Wash. D.C.*, 105 F.2d 62, 65 (D.C. Cir. 1939)); *Sere v. Group Hospitalization, Inc.*, 443 A.2d 33, 37 (D.C. 1982) (stating that "defendants' actions must proximately cause the plaintiff emotional upset") (quoting *Clark*, 105 F.2d at 65).

*iii.* Severity of the Emotional Distress

"In order to qualify as severe emotional distress, the alleged distress must be 'of so acute a nature that harmful physical consequences might be not unlikely to result."' *Daniels v. District of Columbia*, 894 F. Supp. 2d 61, 68 (D.D.C. 2012) (quoting *Sere*, 443 A.2d at 37) (additional citation omitted). Plaintiff's Fourth Amended Complaint asserts emotional distress in a conclusory fashion without supporting factual allegations. That Plaintiff allegedly "suffered extreme humiliation and emotional distress," 4th Am. Compl. ¶ 89, does not qualify as severe. *See Johnson v. Paragon Sys., Inc.*, 195 F. Supp. 3d 96, 100 (D.D.C. 2016) (noting absence of "any concrete or articulable effects of psychological or physical trauma as a direct cause of Defendant's conduct" in concluding plaintiff failed to state IIED claim); *Banks v. Bowser*, No. 18-CV-2146, 2019 WL 2161565, at *5 (D.D.C. May 17, 2019) (deeming "bald assertion of 'emotional suffering' . . . insufficient"); *Futrell*, 816 A.2d at 808 (concluding that "'mental anguish' and 'stress' would not rise to the level of the 'severe emotional distress' required by the case law").

### 4. Count XII: Conspiracy Under 42 U.S.C. § 1983

#### a. Plaintiff Adequately Alleges a Conspiracy

Count XII alleges a conspiracy to deprive Plaintiff of his right to due process by

disclosing protected mental health information for the purpose of effecting his involuntary

commitment. *See* 4th Am. Compl. ¶¶ 110-13. A viable civil conspiracy claim requires that

Plaintiff allege facts demonstrating:

> (1) an agreement between two or more persons; (2) to participate in
> an unlawful act, or a lawful act in an unlawful manner; (3) an injury
> caused by an unlawful overt act performed by one of the parties to
> the agreement; (4) which overt act was done pursuant to and in
> furtherance of the common scheme.

*Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983) (citation omitted).

Defendants argue that Plaintiff fails to state a conspiracy claim for two reasons. First,

Defendants claim the allegations in Count XII are "conclusory . . . and do not provide the

requisite specificity to plead a conspiracy." Reply at 7. Given a fair reading, the Fourth

Amended Complaint passes muster. It alleges sufficient facts indicating an agreement between

Chauvin and unidentified Green Door employee, *see* 4th Am. Compl. ¶ 33, Chauvin's unlawful

disclosure of protected mental health information, *see id*. ¶¶ 33, 35, and a common scheme to

have Plaintiff involuntarily committed, *see id*. ¶ 110.

Next, Defendants note that Chauvin now stands alone. *See* Defs. Mot. at 12. The alleged

conspirators are Chauvin, Green Door, David Walker, DBH and Laura Nichols, *see* 4th Am.

Compl. ¶ 110, and the court has dismissed all except Chauvin. Because "there are no parties left

with whom Chauvin could have conspired," Defendants argue that they are entitled to judgment

in their favor. Defs. Mot. at 12. "If no viable cause of action exists against" the alleged co-

conspirators whom the court has dismissed, Defendants argue, "it follows that one cannot exist

11

with Chauvin," as she "cannot have conspired with herself." Reply at 6. Plaintiff counters that

the dismissal of the alleged co-conspirators is immaterial. Pl. Oppn. at 12-13.

Regardless of whether Chauvin can be liable for conspiracy now that her alleged co-

conspirators have been dismissed from this case, the court concludes that the claim cannot go

forward under § 1983.

### b. Chauvin Is Not A "State Actor"

A civil rights claim may proceed under 42 U.S.C. § 1983, which provides:

> Every person who, *under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the District
> of Columbia*, subjects, or causes to be subjected, any citizen of the
> United States or other person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action
> at law, suit in equity, or other proper proceeding for redress[.]

*Id.* (emphasis added).

Defendants challenge Plaintiff's allegation that Chauvin and S.O.M.E. as "contractors of

the District of Columbia acting to further the government's interest . . . were therefore acting

under color of law," 4th Am. Compl. ¶ 111. Defendants contend that the Fourth Amended

Complaint fails to allege that Chauvin participated willfully in joint activity with the District of

Columbia, and absent such allegations he does not state a viable § 1983 claim. Defs. Mot. at 12-

14. Plaintiff maintains that S.O.M.E.'s "role as a contractor with the District of Columbia . . .

prove[s] 'state action' for purposes of 42 U.S.C. [§] 1983," Pl. Oppn. at 13, under either of two

theories.

Plaintiff argues that under a public function test, S.O.M.E., and in turn Chauvin, are state

actors because they "exercised control over a state function of the District." *Id.* at 13. He

contends that by providing housing and mental health services under contract with DBH,

S.O.M.E. not only performed "function[s] traditionally reserved for the state," *id.* at 13, but also

12

subjected itself to District of Columbia law and regulations promulgated by DBH for the operation of mental health services in the District, *see id.* at 13-14. Plaintiff claims that the District "has been traditionally charged with the care of the homeless and the mentally ill," and his claims arise in part from removal from "housing provided by [S.O.M.E.] through its state granted authority." *Id.* at 14.

To support his argument, Plaintiff cites *Jordan v. District of Columbia*, 949 F. Supp. 2d 83, 90 (D.D.C. 2013). In *Jordan*, a minor committed to the physical custody of the District's Child and Family Services Agency and her parent sued the District and PIW, where the minor allegedly was restrained and administered psychotropic drugs without her parent's consent. *See Jordan*, 949 F. Supp. 2d at 85-86. The court found that plaintiffs adequately alleged that PIW was a "state actor" for purposes of their § 1983 claims, based on their allegations that the District contracted with PIW to provide services for minors in its custody, that PIW made treatment decisions without first consulting the District, and other allegations indicating that PIW had been delegated a public function by the District. *See id.* at 90.

Plaintiff's reliance on *Jordan* is misplaced. In *Jordan,* The District had custody of the minor plaintiff and essentially stepped into the role of the minor's parent. In such circumstances, where the District delegates to PIW the care of a minor in its custody without further direct involvement in the minor's care and treatment, one could infer that PIW assumed a public function. But Plaintiff does not allege that he is or was a ward of the District.

A public function theory might apply if providing housing and mental health services were exclusively government functions. The fact that the District can and does provide housing and mental health services to its residents does not establish that providing these services is the *exclusive* domain of the government. *See Rendell-Baker v. Kohn*, 457 U.S. 830, 840 (1982)

("[O]ur holdings have made clear that the relevant question is not simply whether a private group is serving a 'public function.' We have held that the question is whether the function performed has been 'traditionally the *exclusive* prerogative of the State.'" (citation omitted) (emphasis in original)); *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992) (concluding that private non-profit corporation providing counseling and mental health services to community is not "state actor" because "providing mental health services has not been a power which has traditionally been exclusively reserved to the state"). S.O.M.E. does not become a state actor because it accepted public funds in exchange for services rendered under contract with DBH, *see Wolotsky*, 960 F.2d at 1336 (finding that defendant's receipt of "a significant portion of its funding from the government does not convert it into a state actor"); *cf. Remy v. Howard Univ.*, 55 F. Supp. 2d 27, 29 (D.D.C. 1999) ("Instead of just providing funds, the government must exert control over an institution before a body becomes subject to governmental First and Fifth Amendment restrictions."), or because it is obliged to comply with DBH regulations governing the provision of mental health services, *see Blum v. Yaretsky*, 457 U.S. 991, 1004-11 (1982) (finding that private nursing home was not state actor despite extensive regulation by and fees received from state).

In the alternative, Plaintiff advances a joint action theory, *see* Pl. Oppn. at 15, which "require[s], at a minimum, some overt and significant state participation in the challenged action," *Hoai v. Vo*, 935 F.2d 308, 313 (D.C. Cir. 1991). "A person may be considered a state actor for purposes of [§] 1983 if [she] is a willful participant in joint activity with the State or its agents, if there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself, or where there is a transfer of

State authority." *Edwards v. Okie Dokie, Inc.*, 473 F. Supp. 2d 31, 40-41 (D.D.C. 2007) (internal

quotation marks and citations omitted).

According to the Fourth Amended Complaint, by referring Simmons to Green Door,

Walker disclosed protected mental health information, that is, the existence and identity of

Plaintiff's mental health services provider. *See* 4th Am. Compl. ¶ 33.  The only alleged "meeting

of the minds" occurred when Chauvin spoke with unidentified Green Door staff in December

2010, during which Plaintiff's "complete mental health history, Axis and previous diagnoses"

allegedly were disclosed. *Id.*  From these meager allegations, Plaintiff argues that the District

immersed itself in and stamped its approval upon the disclosure of protected mental health

information in conversations between the employees of two private corporations, S.O.M.E. and

Green Door. *See* Pl. Oppn. at 15.

Plaintiff's factual allegations do not establish a "close nexus" or "a substantial degree of

cooperative action," *Collins v. Womancare*, 878 F.2d 1145, 1154 (9th Cir. 1989), between the

District and S.O.M.E. that a joint action theory requires.  This is not, for example, a situation

where S.O.M.E.'s "nominally private character . . . is overborne by the pervasive entwinement of

public institutions and public officials in its composition and workings." *Brentwood Acad. v.*

*Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 298 (2001).  Plaintiff does not allege

that the District involved itself in or directed S.O.M.E.'s operations, or even that Walker

communicated with Chauvin directly.  Walker's referral of Simmons to Green Door does not

lend show that the District was significantly involved or participated in events resulting in the

alleged violation of Plaintiff's due process rights.

15

### B.  Plaintiff's Motion to Reconsider

#### 1. Legal Standard

Relief under Federal Rule of Civil Procedure 54(b) is granted "as justice requires,"

*Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (citation omitted),

which in turn "requires 'determining, within the Court's discretion, whether reconsideration is

necessary under the relevant circumstances,'" *In Defense of Animals v. Nat'l Insts. of Health*,

543 F. Supp. 2d 70, 75 (D.D.C. 2008) (quoting *Cobell v. Norton*, 355 F. Supp. 2d 531, 539

(D.D.C. 2005)).  "Justice may require revision when the Court has patently misunderstood a

party, has made a decision outside the adversarial issues presented to the [c]ourt by the parties,

has made an error not of reasoning but of apprehension, or where a controlling or significant

change in the law or facts has occurred since the submission of the issue to the Court." *Singh*,

383 F. Supp. 2d at 101 (internal quotation marks, brackets, and citations omitted).  Plaintiff as

the moving party "carries the burden of proving that some harm would accompany a denial of

the motion to reconsider[.]" *In Defense of Animals*, 543 F. Supp. 2d at 75.

#### 2. Count X: Denial of Substantive Due Process

Despite the fact that the caption above Count X, *see* 4th Am. Compl. ¶ 103, suggests that

S.O.M.E. is the sole Defendant against which Count X is brought, Plaintiff argues that the court

incorrectly presumes  that Count X is brought only against S.O.M.E.  Mem. of P. & A. in

Support of Pl. Melvin Brown's Second Mot. to Recons. Dismissal of Defs. Chauvin, Sealy and

Bond (ECF No. 150-1, "Mot. Recons.") at 4.  The text of the complaint indicates that Chauvin,

Sealy and Bond, too, are intended Defendants, *see* 4th Am. Compl. ¶ 103, and Plaintiff deems "it

. . . a disservice . . . to exalt a caption of a count over a numbered, factual allegation," Mot.

Recons. at 5.  By alleging that S.O.M.E. and its employees were "acting under color of law," 4th

16

Am. Compl. ¶ 103, Plaintiff purports to "identif[y] the individual defendants in their personal capacities for a violation of substantive due process," Mot. Recons. at 4.  Plaintiff asks that if the court finds Count X "ambiguous," it resolve the ambiguity in his favor because "justice would require allowing the counts against the individually named defendants to go forward to meet the ends of justice and promote an efficient progression of the litigation."  *Id*. at 5.  Defendants respond that the mere mention of Chauvin, Sealy and Bond in Count X is not dispositive, as "non-parties are often named in factual allegations."  Defs. Reply at 2.

Even if Count X is construed as a claim against Chauvin, Sealy and Bond in their individual capacities, Plaintiff still faces a significant hurdle.  His success depends on a finding that these Defendants are "state actors."  For the same reasons discussed above regarding Count XII against Chauvin, Plaintiff fails to demonstrate that a contractual relationship between DBH and S.O.M.E. renders S.O.M.E. and its employees state actors subject to liability under § 1983.

## III. CONCLUSION

The court concludes that the Fourth Amended Complaint (1) fails to state claims against Parot, Brown-McCall and Hill, and (2) fails to state IIED and constitutional conspiracy claims upon which relief can be granted.  Defendants' motion for judgment on the pleadings will be GRANTED and Plaintiff's motion to reconsider will be DENIED.  An Order is issued separately.


September 20, 2021                          /s/
                                           TANYA S. CHUTKAN
                                           United States District Judge

17